IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**CHRISTOPHER PARFITT**
**individually,**

**Plaintiff**

vs.

**FLORIDA GULF COAST UNIVERSITY BOARD OF TRUSTEES,**
a public body corporate of the State of Florida;   CA. NO._____
**FLORIDA GULF COAST UNIVERSITY, a public university;**
**EUNSOOK HYUN , in her individual capacity;**   JURY DEMANDED
**JAMES LLORENS, in his individual capacity, and;**
**PRECIOUS GUNTER, in her individual capacity,**

**Defendants.**

## COMPLAINT

Plaintiff, CHRISTOPHER PARFITT, by and through his undersigned counsel, respectfully submits his Complaint against Defendants, FLORIDA GULF COAST UNIVERSITY BOARD OF TRUSTEES, FLORIDA GULF COAST UNIVERSITY, EUNSOOK HYUN PHD, JAMES LLORENS, PHD, and PRECIOUS GUNTER and in support alleges as follows:

### THE PARTIES

1. Plaintiff, CHRISTOPHER PARFITT ("PARFITT"), is an adult citizen of Lee County, Florida who resides at 427 Southeast 20th Court, Cape Coral, Florida 33990.

2. Defendant, FLORIDA GULF COAST UNIVERSITY BOARD OF TRUSTEES (the "BOARD"), is a corporate public body, established by Florida, law that serves as the

governing body of FLORIDA GULF COAST UNIVERSITY. At all times pertinent to this Complaint, the BOARD retained the authority to prevent or aid in preventing the wrongdoing set forth below. The BOARD may be sued in its own name under Florida law.

3. Defendant, FLORIDA GULF COAST UNIVERSITY ("FGCU"), is a citizen of the State of Florida whose principal place of business is 10501 FGCU Boulevard South, Ft. Myers, Florida 33965. At all times pertinent to this Complaint, FGCU was acting under the control, oversight and administration of the BOARD.

4. Defendant, EUNSOOK HYUN, PhD. ("HYUN"), is a state actor, the Dean of the College of Education at FGCU and a citizen of the State of Florida who resides at 11640 Medowrun Circle, Fort Myers, Florida 33913-9067.

5. Defendant, JAMES LLORENS, PhD. ("LLORENS"), is a state actor, Interim Provost and Vice President for Academic Affairs for FGCU, and a citizen of the State of Florida who resides at 20101 Torch Key Way, Estero, Florida 33928-4040.

6. Defendant, PRECIOUS GUNTER ("GUNTER"), is a state actor, the Director of Equity, Ethics, Compliance and Title IX Coordinator for FGCU, and a citizen of the State of Florida who resides at 7590 Omni Lane, Apt. 208, Fort Myers, Florida 33905-5447.

7. HYUN, LLORENS, and GUNTER are sued in their personal capacities. PARFITT seeks to impose personal liability HYUN, LLORENS and GUNTER for unconstitutional actions that were taken under color of state law, as set forth below. They will be referred to collectively in this Complaint as the "Individual Defendants."

8. At all times pertinent to this Complaint, the Individual Defendants were acting within the course and scope of their employment with FGCU and/or the BOARD. This lawsuit intends to impose liability on FGCU and the BOARD for the acts and omissions of the Individual Defendants under the doctrine of *respondeat superior*.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1343(3) because PARFITT's Complaint addresses the deprivation of his right to Due Process pursuant to 28 U.S.C § 1983, in violation of the Fifth and Fourteenth Amendments to the Federal Constitution.

10. This Court has authority to award attorney's fee pursuant to 28 U.S.C § 1988.

11. This Court has supplemental jurisdiction over PARFITT's remaining state law claims pursuant to 28 U.S.C. § 1967(a).

12. Venue properly lies in the Middle District of Florida pursuant to 28 U.S.C § 1291(a) because a substantial portion of PARFITT's claims occurred there and Defendants reside there.

## GENERAL ALLEGATIONS

### Background

13. From January 17, 2017, to December 7, 2018, FGCU employed PARFITT as, among other things, a Professor of Educational Leadership. *See* March 7, 2018 Offer Letter, which PARFITT accepted, attached hereto and incorporated herein by reference as **Exhibit "A."** This written document is a binding contract.

14. After receiving his terminal degree from FGCU, PARFITT was the first instructor at FGCU to become a full-time professor in the College of Education.

15. Prior to accepting his new role as a professor, PARFITT carefully reviewed FGCU's policies and procedures, which incorporate the Collective Bargaining Agreement ("CBA"), its progressive discipline policy, just cause standard and notice requirements. A true and correct copy of FGCU's Collective Bargaining Agreement ("CBA") is attached hereto and

incorporated herein as **Exhibit "B"** (*See*, Article 16, pp. 43-44 of **Exhibit "B"** and Appendix I, attached hereto and incorporated herein as **Exhibit "C."**) Separately and individually, these documents included material term(s) of PARFITT's employment contract with FGCU.

16. PARFITT accepted and agreed to the policies and procedures and relied on their protections when he accepted his professorship.

17. PARFITT was not an at-will employee because FGCU promised in writing that he would not be terminated without a finding of "just cause." This protection was a material term of PARFITT's employment contract with FGCU.

18. FGCU, the BOARD and the Individual Defendants were given substantial discretion in discipline and termination decisions involving professors.

19. The policies and procedures referenced in paragraph (13)- (18) and (21)- (30) of this Complaint were intended, among other things, to provide PARFITT with specific, procedural protections regarding certain aspects of his employment, including termination.

20. Prior to November 1, 2018, PARFITT had never been disciplined or accused of any misconduct at FGCU.

21. At all times pertinent to this Complaint, PARFITT retained clearly established due process rights in the pre- and post-termination phases of his separation from FGCU, as fully set forth above.

**The Policies**

22. At all times pertinent to this Complaint, FGCU and the Individual Defendants were required to follow FGCU policies and procedures in investigating and disciplining alleged workplace policy violations including, *inter alia*, policies included in the CBA with the

applicable Union and FGCU policies that apply to investigations, discipline and termination in the workplace.

23. A true and correct copy of FGCU's Consensual Relationship Policy is attached as **Exhibit "D"** and incorporated by reference into this Complaint.

24. The Consensual Relationship Policy, as stated in the CBA, clearly states that "[a]ny discipline to be taken shall be in accordance with applicable University Regulations as well as the terms of any applicable Collective Bargaining Agreement." *See* **Exhibit "B,"** Article 19, p. 64 and **Exhibit** "D," p. 2, ¶ F.

25. Unlike FGCU's sexual harassment policy, which is punitive in its application, the Conflict of Interest Policy is designed to identify and remedy conflicts of interest through disclosure and collaboration.

26. At all times pertinent to this Complaint, FGCU utilized a "progressive discipline" policy which clearly stated that a suspension was one "step" toward termination, even when alleged serious violations are involved. *See* **Exhibit "B,"** Article 16, pp. 43-44. In this important document, FGCU endorses "the principle of progressive discipline as applied to professionals," but there are no standards, policies or guidelines that explain how progressive discipline should be implemented and applied. *Id.*

27. At all times pertinent to this Complaint, FGCU and the Individual Defendants were contractually obligated to exercise their discretion in good faith and provide PARFITT with progressive discipline with respect to his alleged policy violations. *Id.*

28. The Progressive Discipline Policy (Oral Reprimand, Written Reprimand, Suspension, Dismissal) is designed to provide a prompt and equitable procedure for disciplinary actions taken by FGCU.

29. Just cause is defined as: (1) incompetence, or (2) misconduct.  *See* **Exhibit "B,"** pp. 43-44, § 16.1.  No standards or factors are provided to guide decision-makers in applying this standard.  The CBA provides other, critical protections, including the following:

> A.  "An employee's activities which fall outside the scope of employment shall constitute misconduct only if such activities adversely affect the legitimate interests of the University."  *Id*. at § 16.1B.
>
> B.  "When the President or representative has reason to believe that a suspension or termination should be imposed, the President or representative shall provide the employee with a written notice of the proposed action and the reasons therefor.  The employee shall be given ten (10) days in which to respond in writing to the President or representative before the proposed action is taken. **The President or representative then may issue a notice of disciplinary action.**"  *Id*. at § 16.3A (emphasis supplied).
>
> C.  "An employee shall be given written notice of termination at least **six (6) months** in advance of the effective date of such termination, except that in cases where the **President or his representative** determines that an employee's actions adversely affect the functioning of the University or jeopardize the safety or welfare of the employee, colleagues, or students, the President or representative may give less than six (6) months' notice. The University retains its right to impose disciplinary action other than termination for just cause including, but not limited to, suspension with or without pay."  *Id*. at p. 45, § 16.5 (emphasis supplied).

**Factual Background**

30. On November 1, 2018, PARFITT received a phone call from Defendant, Dean HYUN, who insisted that PARFITT meet with her and Co-Defendant LLORENS, the Interim Provost, within the hour.

31. During the November 1, 2018 meeting, the Individual Defendants misrepresented that they were investigating PARFITT for undefined allegations of "sexual harassment."

32. Inexplicably, Dr. HYUN refused to disclose the purpose of the meeting and the nature of PARFITT's alleged wrongdoing.  As a result, PARFITT was not provided with a

meaningful opportunity to defend himself or otherwise respond to these unanticipated, undisclosed allegations at the November 1, 2018 meeting.

33. At the meeting, Dr. LLORENS read a document to PARFITT that accused him, in the most general terms, of sexual harassment, and further instructed PARFITT that he was now on administrative leave, with pay. *See* November 1, 2018 Correspondence from LLORENS to PARFITT, attached hereto and incorporated by reference as **Exhibit "E."** This letter falsely accused PARFITT of "sexual harassment."

34. Parfit never sexually harassed anyone during his employment at FGCU.

35. Even so, PARFITT was stripped of his internet credentials, barred from his office and instructed not to contact anyone at FGCU. As a result of these directives, PARFITT was ostracized and deprived of an opportunity to investigate and determine what facts, if any, might be presented in defense of these shocking allegations.

36. PARFITT is/was never, in any way, a threat to the University, its instructors or its students, nor did the University, its President or the President's representative make any findings to the contrary.

37. On November 6, 2018, GUNTER "interviewed" PARFITT in connection with the "investigation" into his alleged misconduct. This was not a hearing.

38. At the November 6, 2018 meeting, GUNTER refused to provide any information regarding the purpose of the interview, the details of the Complaint or the supporting evidence, including relevant documentation and the identity of the witnesses. At the time, PARFITT did not even know whether he was being investigated for "sexual harassment," as LLORENS previously represented. To confuse matters further, GUTNER ambushed PARFITT with accusations of a "policy violation" and two new complaints of sexual harassment, which were completely false.

39. PARFITT had no prior notice of the purpose of the meeting, or these new allegations, and he was not allowed to call witnesses, introduce evidence or otherwise challenge his accusers or gather evidence to defend himself. In fact, GUNTER encouraged PARFITT to "get this over with" instead of retaining and conferring with an attorney. By now, PARFITT did not understand the accusations under "investigation," nor was he provided with a reasonable opportunity to defend himself against them.

40. At the interview, GUNTER insisted on asking intrusive, inappropriate questions regarding the nature and extent of the sexual interactions between PARFITT and the Complainant who accused PARFITT of violating the Consensual Relationship Policy. This harassing inquiry was completely unnecessary, as PARFITT had already admitted to violating the Consensual Relationship policy.

41. On November 21, 2018, GUNTER issued her "investigative report," which is attached hereto as **Exhibit "F"** and incorporated by reference herein. There, GUNTER falsely concluded that PARFITT was in a position of power over Complainant because he was her "Professor and Supervisor" and served on her dissertation committee. In truth, Complainant initiated the romantic relationship with PARFITT and encouraged their interactions until **she** broke off the relationship in July of 2018 to return to her husband and, in truth. This was a voluntary, consensual romance that Complainant pursued, and ended, only to never once complain about PARFITT until months after she returned to her husband. The Individual Defendants ignored or disregarded Complainant's obvious role in this relationship.

42. On November 27, 2018, LLORENS and HYUN met with PARFITT and provided him with a letter notifying him of FGCU's intent to take undefined disciplinary action against him. *See* "**Exhibit "G**," November 27, 2018 "Notice of Intent," attached hereto

and incorporated by reference into this Complaint. During the meeting, LLORENS read the letter to PARFITT, who was not allowed to speak.

43. According to the letter referenced in the preceding paragraph, PARFITT engaged in "sexual harassment," which was simply not true. PARFITT never sexually harassed anyone at FGCU.

44. In the November 27 meeting, the Individual Defendants provided PARFITT with a document that addressed earlier, alleged policy violations involving sexual harassment that the University never pursued or proved. Members of the faculty in attendance at this meeting informed PARFITT that he was not being investigated or disciplined for sexual harassment. PARFITT, of course, had no idea of what he was being accused of.

45. The November 27 Notice of Intent further stated that PARFITT was being disciplined because he had a consensual romantic relationship with a graduate student before he became a professor. PARFITT admitted his involvement in the relationship and cooperated in the inquiry. Despite their efforts to do so, the Individual Defendants were unable to provide any reliable proof to support their speculative assertion that PARFITT exploited this relationship with the Complainant in any way. More importantly, PARFITT was never given access to the Complainant's allegations, nor was he given an opportunity to question her to explore their veracity.

46. On November 30, 2018, PARFITT filed a request for reconsideration of FGCU's November 27 intent to discipline letter. A true and correct copy of PARFITT's request for reconsideration is attached hereto and incorporated by reference as **"Exhibit H."** At that time, PARFITT learned that LLORENS would be deciding his request, adjudicating any appeals and essentially serving as the sole decision-maker as the process moved forward.

47.  **Two business days later**, on December 5 2018, LLORENS sent PARFITT a letter notifying him of FGCU's intent to terminate his employment as of December 7, 2018.  *See* "**Exhibit "I**," December 5, 2018 "Notice of Discipline," attached hereto and incorporated by reference herein.  The December 5 Correspondence was provided to PARFITT two days before his termination, even though Article 16.6 of the CBA explicitly provides that "an employee shall be given written notice of termination at least six months in advance of the effective date."  *See* **Exhibit "B,"** Article 16.6, pp. 43-44.

48.  The December 5 letter was sent to PARFITT only 6 days after he received the Notice of Intent on November 27.  This flatly violated the CBA, which clearly states that, following the receipt of an "Intent to Discipline" letter, an "employee shall be given ten (10) days in which to respond in writing to the President or his representative before the proposed action is taken."  *See* **Exhibit "B,"** § 16.3A.  Notably, LLORENS is not the President or a representative thereof, yet he decided PARFITT's reconsideration request, with minimal explanation and no rationale.

49.  In terminating PARFITT, Defendants treated PARFITT differently than other similarly situated professors who were given a suspension for similar, and even more serious, alleged misconduct.

50.  In his December 5 Correspondence **(Exhibit "I"**), LLORENS denied PARFITT'S request for reconsideration because PARFITT allegedly provided "no compelling reason" as to why he should not be terminated.  *Id.*

51.  There is no requirement that PARFITT prove that that there was "compelling evidence" to overturn his termination decision.  This standard is a fiction, spun from whole cloth, that made it impossible for PARFITT to properly defend himself against these confusing allegations.

52. PARFITT filed a formal Step II contract grievance on or about December 18, 2018—well after he was fired.  A true and correct copy of PARFITT's grievance is attached as **Exhibit "J"** and incorporated by reference herein.  The grievance was assigned to Tanya Benford, who responded, in writing, on February 19, 2019, well beyond the 30-day timeframe set forth in the CBA.  In her decision, Ms. Benford refuted every single one of PARFITT's concerns in complete, lockstep agreement with the results of GUNTER's November 21, 2018 "investigative report."  *See* **Exhibits "F"** and February 19, 2019 Grievance Decision, attached hereto as **Exhibit "K"** and incorporated by reference herein.  In her findings, Ms. Benford wrongly concluded as follows (her conclusions are bolded and underlined):

> A. **That PARFITT was not entitled to progressive discipline because the progressive discipline policy *allows* for termination in *all* cases**.  The fact that the policy *allows* for termination does not mean that FGCU made an informed, good faith effort to consider and apply the progressive discipline policy to PARFITT, as required by the parties' employment contract, the Due Process clause of the Federal Constitution, and the implied covenant of good faith and fair dealing.  Notably, FGCU was not required to terminate PARFITT upon a finding of "just cause."
>
> B. **That PARFITT had "supervisory" duties over the Complainant**.  This assertion was completely false.  PARFITT never had control or influence over the terms and conditions of the Complainant's employment.  The only "evidence" that Ms. Benford relied on to reach this highly inaccurate conclusion was the fact that PARFITT signed Complainant's Certificate of Residency after their relationship ended.  **Exhibit "J,"** p. 3.
>
> C. **That the Complainant's Certificate of Residency "required PARFITT's signature."** (*Id.*).  This statement is also false.  As Complainant knows, her advisor was required to sign this document, not PARFITT.
>
> D. **That PARFITT was in a supervisor role over the Complainant because they co-taught a course, as adjuncts, in the summer of 2018**.  This is another false statement.  Adjunct Lecturers do not supervise one another, they do not have the power to do so nor do they have control

over the terms and conditions of a colleague's employment at FGCU.  This was not a supervisory relationship.

E.  **That PARFITT was fired with just cause because he was not able to name other similarly situated individuals that had received suspensions for similar conduct.**  PARFITT is not required to produce private personnel records from FGCU to prove he was treated differently than similarly situated employees.  The failure to name someone else who was treated better does not establish "just cause" nor an element thereof.

F.  **That PARFITT was not entitled to six months' notice in advance of his termination, as contractually required, because his actions "adversely affected the functioning of the University" and jeopardized the safety of the faculty and students.** *Id*. This assertion is completely untrue, defamatory and grounded in a subjective bias that infected FGCU's decision-making process regarding PARFITT's termination.  In fact, Ms. Benford freely conceded in her report that she was not authorized to make such a determination, which *can only be made by "the President or President's representative."*  Despite this directive, Ms. Benford committed a flagrant Due Process violation by unilaterally bypassing these requirements and reaching these defamatory conclusions without any supporting authority or evidence.  The President and/or his representative *never* concluded that PARFITT was a threat to his colleagues, his students, or the University.  Absent this condition precedent, FGCU was, at a minimum, *required* to provide PARFITT with 6 months' notice of his termination.

53. On March 20, 2019, PARFITT submitted a timely request for arbitration pursuant to the CBA.  A true and correct copy of PARFITT'S request for arbitration is attached as **Exhibit "L"** and incorporated by reference herein.  As FGCU, the BOARD and the Individual Defendants know, the union spoke directly to FGCU about this request in multiple documents.  See **Exhibits "M" and "N."** The Individual Defendants and FGCU ignored this request, and have done so until the present date, thereby depriving PARFITT of his post-termination Due Process rights and precluding a fair opportunity for PARFITT to remedy numerous, procedurally flawed deprivations of his constitutional rights, as set forth above.  *Id*.

54. Prior to his termination, PARFITT was not provided with (1) timely, written notice of the grounds for termination; (2) disclosure of the evidence supporting his termination; (3) the right (or time) to conduct a meaningful investigation in his defense, and/or (4) a neutral and detached hearing body.

55. At all times pertinent to this Complaint, the Individual Defendants were conducting their affairs under color of state law.

56. Defendants LLORENS, GUNTER and HYUN are all managers and/or supervisors of FGCU who participated personally in the unlawful conduct challenged herein and authorized, acquiesced, set in motion, or otherwise failed to take necessary steps to prevent the acts that resulted in the unlawful conduct and harm suffered by PARFITT. Each acted in concert with each other. The challenged acts caused the violation of PARFITT's rights and the resulting damages, as set forth in this Complaint.

57. The acts of all of the Individual Defendants were intentional in failing to protect, and preserve PARFITT's property interests. At a minimum, all of the Individual Defendants were deliberately/callously indifferent to the likelihood that PARFITT's Due Process rights were being violated through the conduct referenced in this Complaint.

58. PARFITT has retained counsel undersigned to assist him in this matter and is obligated to pay counsel a reasonable fee for said services.

59. All conditions precedent to the filing of this lawsuit have been excused, waived or otherwise performed.

## COUNT I
### (Due Process Violation-- 42 U.S.C. § 1983)(Individual Defendants Only)

60. PARFITT realleges and incorporates the allegations set forth in the preceding Paragraphs 1, 4-6, 7, 13-18 and 20-56 as though fully set forth here.

61. At all times pertinent to this Complaint, PARFITT had a well-established property interest in continued employment with FGCU.

62. At all times pertinent to this Complaint, PARFITT had a well-established reputational interest in his continued employment with FGCU.

63. At all times pertinent to this Complaint, PARFITT was entitled to notice and an opportunity to be heard prior to his termination, including the right to investigate the facts, prepare his defense and cross examine adverse witnesses.

64. In addition, PARFITT had the right to arbitrate his grievances with FGCU following his termination.

65. At all times pertinent to this Complaint, the Individual Defendants were obligated to comply with FGCU's policies and procedures in its interactions with PARFITT.

66. At all times pertinent to this Complaint, the Individual Defendants were obligated to treat PARFITT fairly, objectively and honestly and to only terminate his employment with "just cause."

67. At all times pertinent to this Complaint, the Individual Defendants were required to live up to FGCU's formal endorsement of progressive discipline and utilize this process with PARFITT.

68. At all times pertinent to this Complaint, PARFITT was entitled to 6 months' notice of his termination unless he was a threat to the University or its students.

69. PARFITT was never a threat to the University or its students. To the extent that Benford concluded otherwise, she lacked the authority to make such a determination.

70. The Individual Defendants violated their obligations to PARFITT, as set forth in FGCU's policies and procedures. For example:

A. The Individual Defendants failed to provide advance written or verbal notice to PARFITT of the allegations against him during any of the pre-termination meetings, and they never provided PARFITT with an opportunity to investigate the accusations with reasonable access to campus resources or a full opportunity to put on evidence and cross-examine witnesses;

B. The Individual Defendants failed to follow the progressive discipline policy with PARFITT;

C. The Individual Defendants did not terminate PARFITT with good cause. This was PARFITT's first disciplinary offense and it involved a consensual relationship with a colleague of equal age before PARFITT became a professor. This relationship was outside of the scope of PARFITT's employment. PARFITT was not the Complainant's supervisor and he did not have authority or power over her. PARFITT fully recognized and took responsibility for his actions, which involved no proven abuse of power or other misconduct whatsoever with the involved student, who initiated and terminated the relationship after many failed attempts to secure educational and career opportunities through PARFITT. In fact, PARFITT reasonably viewed the student as his colleague at the time of their relationship;

D. The Individual Defendants ignored and failed to follow through with PARFITT's timely request for arbitration;

E. The Individual Defendants failed to provide 6 months' notice of PARFITT's termination, with no justification, depriving him of substantial income;

F. The Individual Defendants provided a sham termination process with non-objective decision makers who formulated a conclusion on the first day of the investigation and refused to consider competing viewpoints until it was concluded;

G. The Individual Defendants treated PARFITT worse than similarly situated employees who actually committed sexual harassment and other, more serious offense.

H. The Individual Defendants ignored PARFITT's timely requests for a post-termination arbitration hearing, without explanation. When asked, FGCU's lawyer incorrectly represented that the Union had not approved the arbitration and that FGCU was not obligated to honor PARFITT's timely request for the same. Further inquiries by PARFITT regarding his request for arbitration were ignored, without explanation.

71.     As a result of the foregoing deprivations of PARFITT'S constitutional rights, PARFITT has incurred substantial damages in an amount to be proven at trial.

## COUNT II
### (Breach of Contract- FGCU and the BOARD)

72. PARFITT realleges and incorporates the allegations set forth in the preceding paragraphs 1-3, 8, 13-19, 21-29, 33-35, 37 and 53, as though fully set forth here.

73. At all times pertinent to this Complaint, FGCU and PARFITT were parties to a valid and enforceable employment contract (the "Contract").

74. Pursuant to the Contract, FGCU was required to act in good faith, comply with the terms and conditions of FGCU's policies and the Collective Bargaining Agreement, and ensure that PARFITT was provided with all of the rights and privileges of the Contract, as set forth in the preceding paragraphs of this Complaint.

75. FGCU committed numerous material breaches of its contractual obligations to PARFITT, as set forth in FGCU's policies and procedures.  For example:

> A.   FGCU AND THE BOARD failed to provide advance written or verbal notice to PARFITT of the allegations against him during any of the pre-termination meetings, and they never provided PARFITT with an opportunity to investigate the accusations with reasonable access to campus resources or a full opportunity to put on evidence and cross-examine witnesses;
>
> B.   THE INDIVIDUAL DEFENDANTS failed to follow the progressive discipline policy with PARFITT;
>
> C.   FGCU AND THE BOARD did not terminate PARFITT with just cause. This was PARFITT's first disciplinary offense and it involved a consensual relationship with a colleague before PARFITT became a professor. This relationship was outside of the scope of PARFITT's employment, who was not the Complainant's supervisor at the time. PARFITT fully recognized and took responsibility for this policy violation, which involved no abuse of power or other misconduct whatsoever with the involved student, who PARFITT reasonably viewed as his colleague at the time of their relationship.  Notably, Complainant started and terminated this relationship with no outside pressure whatsoever.

    D. THE INDIVIDUAL DEFENDANTS ignored and failed to follow through with PARFITT's timely request for arbitration;

    E. FGCU AND THE BOARD failed to provide six months' notice of PARFITT's termination, with no justification, depriving him of substantial income;

    F. FGCU AND THE BOARD required PARFITT to provide "compelling evidence" to challenge its investigatory findings, in violation of and contradiction to the Contract.

76. As a direct, foreseeable consequence of the misconduct referenced above, PARFITT suffered incidental and consequential damages in an amount to be proven at trial.

## COUNT III
## (Breach of the Implied Covenant of Good Faith and Fair Dealing)
## (FGCU and the BOARD)

77. PARFITT realleges and incorporates the allegations set forth in the preceding Paragraphs 1-3, 8, 13, 15, 17-19, 22-29, 31-35 and 37-53 as though fully set forth here.

78. At all times pertinent to this Complaint, FGCU and PARFITT were parties to a valid and enforceable employment contract (the "Contract").

79. Pursuant to the Contract, FGCU was required to act in good faith, comply with the terms and conditions of FGCU's policies and the Collective Bargaining Agreement, and ensure that PARFITT was provided with all of the rights and privileges of the Contract, as set forth in the preceding paragraphs of this Complaint.

80. PARFITT performed all, or substantially all, of his obligations under the Contract and committed no act that rose to the level of "just cause" or otherwise justified his termination.

81. All conditions precedent to performance by FGCU and the BOARD have been fulfilled as PARFITT has exhausted all of his contractual remedies, excluding arbitration, which FGCU refused to provide, in bad faith.

82. The Contract is silent with respect to the factors that should be taken into account in disciplining or terminating an FGCU professor, or in applying the just cause and progressive discipline policies, thereby conferring considerable discretion on FGCU, the BOARD and the Individual Defendants.

83. FGCU and the BOARD engaged in conduct and exercised discretion that was inconsistent with PARFITT's reasonable expectations under Sections 16.1, 16.1A, 16.2, 16.3A, 16.5 and 16.6 of the CBA, as fully set forth above.

84. As a consequence of FGCU and the BOARD'S violation of the implied covenant of good faith and fair dealing, PARFITT incurred incidental and consequential damages in an amount to be proven at trial.

## REQUEST FOR RELIEF

WHEREFORE PARFITT respectfully requests that this Court:

A. Assume jurisdiction over this matter;

B. Declare Defendants' actions and inactions a violation of rights guaranteed by 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution;

C. Award compensatory and general damages in an amount to be proven at trial, jointly and severally, against the Individual Defendants sued in his or her personal capacity;

D. Award punitive damages, jointly and severally, against the Individual Defendants;

E. Award incidental and consequential damages against FGCU and the BOARD, jointly and severally, in an amount to be proven at trial;

F. Award PARFITT reasonable attorneys' fees and costs under 42 U.S.C. § 1988, and;

G. Grant any other relief the Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

PARFITT respectfully requests a Jury Trial pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the Federal Constitution.

Dated: October 8, 2019

By: s/ Anthony M. Lawhon
Anthony M. Lawhon, P.A.
3003 Tamiami Trail N., Ste. 200
Naples, FL 34103
Phone:  239-325-8956
Fax:  239-236-3300
tonylawhon@lawhonlaw.us
cathyray@lawhonlaw.us
annette@lawhonlaw.us