### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

**CHRISTOPHER PARFITT,**

        **Plaintiff,**

**v.**                                                    **Case No.:  2:19-cv-727-FtM-38NPM**

**FLORIDA GULF COAST
UNIVERSITY BOARD OF
TRUSTEES, FLORIDA GULF
COAST UNIVERSITY,
EUNSOOK HYUN, JAMES
LLORENS, and PRECIOUS
GUNTER,**

        **Defendants.**

_____/

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
### COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

Defendants, FLORIDA GULF COAST UNIVERSITY BOARD OF TRUSTEES (the "Board"), FLORIDA GULF COAST UNIVERSITY ("FGCU"), EUNSOOK HYUN ("Hyun"), JAMES LLORENS ("Llorens"), and PRECIOUS GUNTER ("Gunter") (collectively, "Defendants"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to dismiss the claims in the Complaint (Dkt. No. 1; Compl.) of Christopher Parfitt ("Parfitt" or "Plaintiff").

In the Complaint, Plaintiff asserts state law claims for breach of contract and breach of the implied covenant of good faith and fair dealing against FGCU and the Board based on alleged breaches of the collective bargaining agreement ("CBA") between the Board and the United Faculty of Florida.  However, pursuant to the Florida Statutes, FGCU is not an entity that has the capacity to sue or be sued.  Indeed, the CBA is between the United Faculty of Florida and the

Board, not FGCU.  FGCU is the name of the university, not a legal entity who has the capacity to be sued. Furthermore, because Florida has not waived its Eleventh Amendment immunity, this Court lacks jurisdiction to decide Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing against the Board.  Even if this Court had jurisdiction, Plaintiff cannot sue for breach of the CBA or any implied covenant contained therein when he failed to exhaust his administrative remedies.

Additionally, despite providing Plaintiff with notice and several opportunities to be heard both before and after his termination, Plaintiff asserts that Defendants Hyun, Llorens, and Gunter deprived Plaintiff of his right to procedural due process pursuant to 42 U.S.C. § 1983, in violation of the Fifth and Fourteenth Amendments.[1]  Plaintiff has not and cannot plead facts sufficient to state a plausible procedural due process claim or overcome Defendants' well-established qualified immunity.

As a result, Plaintiff's claims must be dismissed with prejudice.  The grounds for this motion are set forth in further detail below.

## MEMORANDUM OF LAW

## I.     Facts Alleged in the Complaint[2]

---

[1] Plaintiff has not asserted any claim under 42 U.S.C. § 1983 against FGCU or the Board nor has he asserted any claim under 42 U.S.C. § 1983.  Nonetheless, in the "relief" section of the Complaint (Compl. at 18), he purported seeks a declaration related to all Defendants under 42 U.S.C. §§ 1983, 1985.  To the extent that this is an attempt to state a claim against Defendants under these statutes, it is wholly deficient and likewise must be dismissed. Similarly, in paragraph 8 of the Complaint, Plaintiff alleges that FGCU and the Board should be held liable under the doctrine of respondeat superior.  (Compl. ¶ 8).  Yet, there is no claim in which they assert that Defendants should be liable under this doctrine.  To the extent that this allegation is an attempt to assert a claim under the doctrine against Defendants under 42 U.S.C. § 1983, no such claim may be asserted.  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978) (rejecting the application of the doctrine of respondeat superior to § 1983 claims).

[2] Allegations in the Complaint are cited solely for purposes of this Motion to Dismiss, and should not be construed as admissions as to such allegations' truthfulness.  Indeed, many of the allegations in the Complaint are indisputably false.  Nonetheless, some of these allegations are cited herein

A.    **Llorens Notifies Plaintiff of a Complaint Filed Against Him**

Plaintiff was a non-tenured professor.  (Complaint ¶ 13, Ex. A).[3]  On October 29, 2018, Defendant Gunter, the Director of FGCU's Office of Institutional Equity and Compliance, received a complaint through the University's Ethics Point Hotline.  (Compl. Ex. F at 1).  The complaint stated that Plaintiff engaged in a sexual relationship with a student in the program that Plaintiff supervised.  (Id.).  Under FGCU's Consensual Relationship Policy, "any employee with supervisory responsibilities is prohibited from engaging in an undisclosed amorous, dating, intimate or sexual relationship with an employee, student, volunteer or contractor whom he/she supervises."[4]  (Compl. Ex. D at 2).  This policy also provides that "[t]he University has determined that there is an inherent conflict of interest when a faculty member and a student simultaneously maintain both an educational relationship and a consensual dating, amorous, intimate, or sexual relationship."  (Id. at 3).  As a result, the University "prohibits simultaneous participation in both roles."  (Id.).  "[E]ngaging in such misconduct may result in disciplinary action up to and including separation from the University."  (Id.).

On November 1, 2018, Plaintiff met with Defendant Hyun, the Dean of the College of Education at FGCU, and Defendant Llorens, the Interim Provost and Vice President for Academic

---

for the purpose of this motion.  Plaintiff also makes numerous allegations, particularly related to the details of his purported relationship with an FGCU student, that are wholly impertinent and irrelevant to the claims before this Court.  (See, e.g., Compl. ¶¶ 34, 41, 43, Ex. H).  These allegations should be struck under Rule 12(f).  There is no legitimate reason for including these facts, including the identity of the student who complained Plaintiff sexually harassed her, in this Complaint challenging the process related to Plaintiff's termination.

[3] A district court can consider exhibits attached to a complaint in ruling on a motion to dismiss.  If the allegations of the complaint conflict with the contents of an exhibit, the exhibit controls.  See Crenshaw v. Lister, 556 F.3d 1283, 1292 (11th Cir. 2009).

[4] The policy defines supervisor as "[a]nyone who oversees, instructs, advises, directs or evaluates the employment or educational progress of faculty, staff, students, volunteers, and/or contractors."

Affairs for FGCU.  (Compl. ¶¶ 4, 5, 30–31).  During the meeting, Defendant Llorens read a document to Plaintiff which informed Plaintiff that FGCU had received a complaint of sexual harassment against him, FGCU would be conducting a prompt investigation, and Plaintiff was placed on administrative leave with pay pending the outcome of the investigation.  (Id. ¶ 33; Motion Ex. A).[5]

**B.     FGCU Investigates the Student's Complaint and Provides Plaintiff with an Opportunity to be Heard**

On November 6, 2018, Defendant Gunter interviewed Plaintiff in connection with the investigation into his alleged misconduct.  (Compl. ¶ 37).  Defendant Gunter questioned Plaintiff "regarding the nature and extent of the sexual interactions" between Plaintiff and the student who accused Plaintiff of violating the Consensual Relationship Policy.  (Id. ¶ 40).  Plaintiff admitted to violating the Consensual Relationship Policy.  (Id.; Compl. Ex. F at 2).

On November 21, 2018, Defendant Gunter issued an investigative report, which summarized the allegations of misconduct levied against Plaintiff and provided the investigation's findings.  (Compl. ¶ 41, Ex. F).  Gunter concluded, based, in part, on Parfitt's own admission, that Plaintiff clearly violated the Consensual Relationship Policy and she explained the basis for this conclusion:

> The [Plaintiff] served as the Complainant's Professor and Supervisor. He also served on her dissertation committee. While in a supervisory capacity, the [Plaintiff] engaged in a sexual relationship with the Complainant whom is a student in the program that he supervised. The [Plaintiff] failed to disclose the existence of this sexual relationship thus taking no steps to alleviate the inherent conflict of interest. The Complainant stated that due to the [Plaintiff's] position and promises that he made to assist her with future employment, etc., she felt obligated to engage in their sexual relationship out of fear of retaliation. Here, whether that fear truly existed is irrelevant because the [Plaintiff] admitted to engaging in the sexual

---

[5] As Exhibit E to the Complaint is difficult to read, Defendants have attached a true and correct copy of this document as Exhibit A to this Motion.

relationship while in a supervisory capacity. As such, the evidence is sufficient to support a finding of a policy violation.

(Compl. Ex. F at 2).  A copy of the report was sent electronically to Plaintiff.  (Id. at 1).

### C.    The University Notifies Plaintiff of Intent to Terminate and Provides Him with an Opportunity to be Heard Before Terminating His Employment

On November 27, 2018, Defendants Llorens and Hyun met with Plaintiff and provided him with a letter which notified him of the University's intent to terminate Plaintiff's employment, effective at the close of business on December 7, 2018. (Compl. ¶ 42; Motion Ex. B).[6] Specifically, this letter provided:

- Defendant Llorens reviewed "the case against [Parfitt] alleging sexual harassment," which included Plaintiff's admission that he violated the University's Consensual Relationship Policy.

- "In general, [Parfitt's] actions [we]re found to be inconsistent with the University's goals of adherence to acceptable practices and policies as well as reasonable standards of integrity and professionalism."

- As a result, Defendant Llorens provided Plaintiff with express notice of the University's intent to take disciplinary action before the disciplinary action was imposed.

(Motion Ex. B).  Defendant Llorens further explained that the CBA provides an employee may be terminated upon just cause and just cause is defined as misconduct.  (Compl. Ex. B at 43; Motion Ex. B).  He further notified Plaintiff that, pursuant to the CBA, he was providing notice of the "intent to terminate [Plaintiff's] employment with Florida Gulf Coast University for misconduct (violation of the University's Consensual Relationship Policy) effective at the close of business on

---

[6] Plaintiff signed the letter to verify its receipt on November 27, 2018.  (Motion Ex. B).  As Exhibit G to the Complaint is difficult to read, Defendants have attached a true and correct copy of this document as Exhibit B to this Motion.

Friday, December 7, 2018." (Motion Ex. B).  Defendant Llorens notified Plaintiff of his right within ten calendar days "to provide a written response outlining reasons [he] believe[s] the intended action should not be taken."  (Id.).

On November 30, 2018, Plaintiff provided Defendant Llorens with a four-page written response.  (Compl. ¶ 46, Ex. H).  In the letter, Plaintiff again admitted to violating the Consensual Relationship Policy and requested that the University impose lesser discipline for this violation. (Compl. Ex. H at 1).  Plaintiff also provided "contextual evidence" that he believed needed to be considered to convince the University to impose lesser discipline.  (Id.).

### D.   After Providing Plaintiff with Opportunity to Be Heard, Llorens Notifies Plaintiff of Termination

After reviewing Plaintiff's four-page written response, on December 5, 2018, Defendant Llorens sent Plaintiff a letter notifying him of the intent to terminate his employment for misconduct as of December 7, 2018. (Complaint ¶ 47; Motion Ex. C).[7]  Defendant Llorens noted that Plaintiff previously was provided with notice of the University's intent to terminate his employment and that Plaintiff had an opportunity to respond, which he did when he provided the written response on November 30, 2018.  (Motion Ex. C).  Defendant Llorens indicated that he reviewed Plaintiff's response, but found it "provided no compelling reason why the intended action should not be taken."  (Id.).  As a result, Defendant Llorens expressly stated: "[Y]ou are hereby notified that you will be separated from the University through termination on December 7, 2018, and are not eligible for rehire."  (Id.).  He also expressly informed Plaintiff that "this action by the University is subject to Article 20, Grievance Procedure and Arbitration."

### E.   After His Termination, Plaintiff Has Another Opportunity to Be Heard Through a Grievance and Subsequent Grievance Meetings

---

[7] As Exhibit I to the Complaint is difficult to read, Defendants have attached a true and correct copy of this document as Exhibit C to this Motion.

On December 18, 2018, after his termination, Plaintiff filed a Step 2 grievance, alleging that the Board violated Article 16, Sections 2, 3, and 6 of the CBA.  (Compl. ¶ 52, Ex. J). Specifically, he asserted that the University failed to impose progressive discipline, the University did not have just cause, and he should have been given 6 months' notice before his termination. (Id.).  The CBA provides that "[t]he filing of a grievance constitutes a waiver of any applicable rights to review of University action pursuant to the Administrative Procedures Act, Chapter 120, Florida Statutes, or to the review of such action under university regulations, policies, procedures which may otherwise be available to address such matters." (Compl. Ex. B).  Thus, by filing the grievance, Plaintiff voluntarily waived his right to be heard through certiorari or other state procedures.  Nonetheless, through the grievance procedure itself, Plaintiff was afforded numerous opportunities to be heard.

On January 4, 2019, the grievance was assigned to a university representative, Tanya Benford.  (Compl. Ex. J at 2).  Benford met with Plaintiff on January 10, 2019, to discuss his grievance, and again on January 25, 2019, to obtain additional clarification on points discussed in the prior meeting.  (Id.).  At the Step 2 meetings, the grievant has the right to present any evidence in support of the grievance.  (Compl. Ex. B at 71).  The grievant also has "the right, upon written request, to a copy of any identifiable documents relevant to the Step 2 grievance and not previously provided or not available on the University's website or share drive."  (Id.).  Plaintiff did not make any written request for any documents nor does he allege that he did so.  However, it cannot be disputed that he had the opportunity to do so.

On February 19, 2019, Benford denied the grievance and sent Plaintiff a written decision summarizing and explaining the reasons for her decision.  (Compl. Ex. K at 1).  Benford provided a detailed report "summarize[] [her] findings, decisions, and underlying reasoning regarding each

of the alleged violations." (Id.).  This decision included a list of the documents referred to in the decision as well as any additional documents presented by either party during the review of the grievance. (Id.).

### F. Plaintiff Had the Opportunity to be Heard Through Arbitration, But He Failed to Comply with the Administrative Exhaustion Requirements in the CBA

According to Article 20.6(F)(1) of the CBA, "[i]f the grievance has not been satisfactorily resolved at Step 2, [the Union] may, upon the request of the grievant, proceed to Step 3 Request for Arbitration within the time limitations outlined in this Agreement." (Compl. Ex. B at 72 (emphasis added)).  "All Step 3 Requests for Arbitration must be filed with the Office of Academic Affairs within thirty (30) days of the receipt of the Step 2 decision . . . by the grievant **and** [the Union]." (Id. (emphasis added)).  Additionally, the CBA requires that all demands for arbitration be signed by "the grievant and sent by [the Union] to the Office of Academic Affairs and the UFF-FGCU State President or State Director of Arbitration." (Id.).  "As the certified bargaining agent UFF-FGCU State Office shall decide whether to proceed to arbitration." (Id.).  As the CBA provides, a notice of intent to arbitrate from the Union's state office is required to proceed to arbitration. (Id.). Finally, as the CBA expressly provides, "[a] grievance which has been filed at Step 3 and on which no action has been taken by the grievant *or* UFF-FGCU State Office for sixty (60) days shall be deemed withdrawn and resolved in accordance with the decision issued at the prior Step." (Id. at 75).  Likewise, it also cautions that "[u]pon the failure of the grievant or the UFF-FGCU, where appropriate, to file an appeal within the time limits provided in this Article, the grievance shall be deemed to have been resolved by the decision at the prior step." (Id. at 70).

Plaintiff alleges that on March 20, 2019, he submitted a request for arbitration pursuant to the CBA.  (Compl. ¶ 53, Ex. L).  However, as outlined in the CBA, in order to proceed to arbitration, the Union was required to submit a request for arbitration by March 21, 2019 (thirty

days after receipt of the Step 2 decision) to the Office of Academic Affairs.  As evidenced by Exhibit L to Plaintiff's Complaint, Plaintiff failed to follow the procedures for requesting arbitration.  (See Compl. Ex. L).  Plaintiff does not allege and the exhibits to the Complaint do not support that the Union requested to proceed to arbitration on Plaintiff's grievance within the time period provided in the CBA.  Indeed, the demand for arbitration, which was attached as Exhibit L to the Complaint, is not signed by the Union.  In addition, the agreement between Plaintiff and the Union did not include the Board as a party; was not provided to the Office of Academic Affairs; is dated April 9, 2019, after the deadline to demand arbitration; and, even in this agreement, the Union does not request arbitration of Plaintiff's grievance.  (See Compl. Ex. N).  Pursuant to the CBA, which was ratified by the bargaining unit, only the certified bargaining agent, UFF-FGCU State Office, shall determine whether to proceed to arbitration.[8]

As the Board explained to Plaintiff, it did not receive notice of intent to proceed to arbitration from the UFF-FGCU State Office, the certified bargaining agent.  (See Compl. Ex. O). Consequently, Plaintiff's request for arbitration was time-barred and, pursuant to the express terms of the CBA, the grievance was resolved at Step 2.  (See Compl. Exs. B & O).[9]

Plaintiff asserts that Defendants Hyun, Llorens, and Gunter deprived Plaintiff of his right to procedural due process pursuant to 42 U.S.C. § 1983, in violation of the Fifth and Fourteenth

---

[8] Parfitt, of course, had the opportunity to challenge the decision by filing an unfair labor practice charge with PERC against the Union if he believed that this decision was a violation of the Union's duty of fair representation.  Parfitt elected not to do so.

[9] Citing to Exhibits M and N, Plaintiff alleges that "the union spoke directly to FGCU about this request in multiple documents."  (Compl. ¶ 53).  Yet, as set forth herein, Exhibit M and N do not reflect that either UFF-FGCU or UFF-FGCU State Office provided any notice of intent to arbitrate Plaintiff's grievance.  (See Compl. Exs. M & N).  Instead, Exhibit M is a letter from Parfitt's former counsel dated May 10, 2019, expressing Parfitt's counsel's understanding and Exhibit N is a purported agreement between Parfitt and the Union, which does not express the Union's request for arbitration in this matter, and is dated after the deadline to request arbitration.  (See Compl. Exs. M & N).

Amendments.  (Compl. ¶¶ 9, 60–71).  Additionally, despite failing to exhaust his administrative remedies, Plaintiff also asserts state law claims for breach of contract and breach of the implied covenant of good faith and fair dealing against FGCU and the Board.  (Complaint ¶¶ 72–84).  As addressed below, Plaintiff's claims fail as a matter of law and the Complaint must be dismissed with prejudice.

## II.    Legal Argument

### A.    Rule 12(b)(1) Standard

Rule 12(b)(1) motions to dismiss assert a lack of subject matter jurisdiction.  Eleventh Amendment immunity analysis is appropriately conducted under 12(b)(1) where it does not implicate the merits.  See Thomas v. U.S. Postal Service, 364 F. App'x 600, 601 (11th Cir.2010) ("[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists."); Ostroff v. State of Fla., Dep't of Health & Rehab. Servs., 554 F. Supp. 347, 355 n. 13 (M.D. Fla. 1983) (electing to analyze the state agency defendant's Eleventh Amendment defense under Rule 12(b)(1)).

### B.    Rule 12(b)(6) Standard

Rule 12(b)(6) allows a party to raise a defense based on "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss, a pleading "must plausibly allege all the elements of the claim for relief."  Feldman v. Am. Dawn, Inc., 849 F.3d 1333, 1339 (11th Cir. 2017) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs."  Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).

That maxim, however, does not apply to "labels and legal conclusions."  Id.  Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient.  Iqbal,

556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Mere naked assertions are insufficient.  Id.  Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### C.   FGCU Is an Improper Party and Must Be Dismissed

As an initial matter, Florida Gulf Coast University is an improper party as a matter of law. FGCU is part of the Florida "State university" system. See Fla. Stat. § 1000.21(6)(j).  Each constituent university has a board of trustees. See id. § 1001.71.  Each board of trustees, in turn, is "a public body corporate with all the powers of a body corporate, including the power to adopt a corporate seal, to contract and be contracted with, to sue and be sued, to plead and be impleaded in all courts of law or equity." Id. § 1001.72(1).  Accordingly, the Florida Gulf Coast University Board of Trustees is the proper entity to be sued in cases asserting claims against FGCU.  See Hui Li v. Univ. of Fla. Bd. of Trustees, No 1:14–cv–236–RS–GRJ, 2015 WL 1781578, at *2 (N.D. Fla. Apr. 20, 2015) (stating that University of Florida Board of Trustees is the only University of Florida entity with the capacity to be sued).  As a result, Plaintiff's claims against FGCU must be dismissed with prejudice as it does not have the capacity to be sued.

### D.   Plaintiff's State Law Claims against the Board (Counts II and III) Also Must Be Dismissed

#### 1.   The Board Is Entitled to Sovereign Immunity and the Court Is Without Jurisdiction over Counts II and III of the Complaint

The Eleventh Amendment prohibits federal courts from exercising subject matter jurisdiction in suits brought against a state by a citizen of that state. "In Florida, sovereign immunity is the rule, rather than the exception." Pan–Am Tobacco Corp. v. Dep't of Corr., 471 So.2d 4, 5 (Fla.1984). The Eleventh Amendment extends to state agencies and other arms of the state. Univ. of S. Fla. Bd. of Trustees v. CoMentis, Inc., 861 F.3d 1234, 1235 (11th Cir. 2017). State agencies are immune from suit under the Eleventh Amendment unless their immunity is either waived by the state or abrogated by Congress. Gamble v. Fla. Dept. of Health and Rehabilitative Services, 779 F.2d 1509, 1511 (11th Cir.1986).

Florida defines the Board to be a part of the state government. See Fla. Stat. § 1000.21(6)(j). Specifically, the state of Florida has declared that the "boards of trustees [of state universities] are a part of the executive branch of state government." Id. § 1001.71(3). The state therefore clearly defines the FGCU Board to be a part of its government. See CoMentis, Inc., 861 F.3d at 1235.

Here, Plaintiff's state law claims for breach of contract and breach of the implied covenant of good faith and fair dealing against the Board are barred by sovereign immunity. Although Florida has waived its sovereign immunity for breach of contract suits in its own courts, see, e.g., Pan–Am Tobacco Corp., 471 So.2d at 5, Florida has not waived its immunity from suit in federal court for breach of contract. See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1287–88 (11th Cir. 2003). Because Florida has not waived its Eleventh Amendment immunity, this Court lacks jurisdiction to decide Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing against the Board. Id. at 1287. Accordingly, Counts II and III of Plaintiff's Complaint must be dismissed.

2.      **Plaintiff Fails to State a Claim for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**

Even if these claims were not barred by Eleventh Amendment immunity, and the Court had jurisdiction to hear this matter, it is well settled that Plaintiff cannot bring these claims. Specifically, Plaintiff attempts to assert a claim of breach of contract and breach of the implied covenant of good faith and fair dealing based on alleged violations of the CBA.  However, "[i]t is a well settled princip[le] that a party, when bound by a collective bargaining agreement, must exhaust any administrative remedy prior to litigating in court." Public Health Trust v. Hernandez, 751 So. 2d 124, 125 (Fla. Dist. Ct. App. 3d 2000). Indeed, in Public Health, the collective bargaining agreement, as in this CBA, provided that the union, not the grievant, could seek arbitration.  Id.  The grievant did not use the grievance process and filed suit in state court to compel arbitration.  Id.  The court dismissed the complaint, holding that, as a member of the bargaining unit, the plaintiff "was contractually obligated to exhaust his administrative remedies by following the four-step grievance process prior to litigating in court."  Id.  The court dismissed the case when the plaintiff failed to do so.  See id.

This principle has been routinely affirmed in the state courts.  See Kantor v. School Bd. of Monroe County, 648 So. 2d 1266, 1267 (Fla. Dist. Ct. App. 3d 1995) ("To the extent that appellant contends there was a violation of a provision of the collective bargaining agreement, appellant was obliged to resort to the grievance procedures specified therein."); see also Miami Ass'n of Firefighters Local 587 v. City of Miami, 87 So. 3d 93, 95 (Fla. Dist. Ct. App. 3d 2012) ("The issue presented on appeal is whether a violation of the requirements and procedures under the Collective Bargaining Agreement and those provided in Florida statutes creates an issue within the jurisdiction of the circuit court prior to being heard by PERC. We agree with the trial court that it does not."); Sickon v. School Board of Alachua County, Fla., 719 So. 2d 360, 364 (Fla. Dist. Ct.

App. 1st 1998) ("Redress for violations of rights arising under the collective bargaining agreement must be pursued in the manner contemplated by the collective bargaining agreement").  Indeed, as the court in <u>Koenig v. Tyler</u>, 360 So. 2d 104, 106 (Fla. Dist. Ct. App. 3d 1978), recognized: "[T]he applicable law is clear that plaintiffs, having designated the Union to be their agent for collective bargaining purposes, are bound by agreements made by the Union on their behalf.  To hold otherwise would make a shambles of all labor negotiations and would be a refutation of long experience in that field."

As a result, Plaintiff is bound by the agreements made by the Union in the CBA, including the agreements made regarding the grievance process, which establish the administrative exhaustion requirements for these claims.  Plaintiff admits that his claim did not proceed to arbitration, which is a required part of the administrative process.[10]  The exhibits to the Complaint establish that the Union did not timely provide a request for arbitration and the UFF-FGCU State Office did not provide a notice to the Board of its intent to arbitrate.  As a result, under the CBA, Parfitt's grievance, including the violations of the CBA alleged in the Complaint, were considered amicably resolved at the Step 2 decision.  (See Compl. Ex. B at 67-75).

To the extent that Plaintiff contends that the Board failed to recognize a timely demand for arbitration, that assertion does not give Plaintiff the ability to bring these claims in court.  Instead, Plaintiff was required to pursue another administrative avenue – a complaint with PERC. <u>City of Miami</u>, 87 So. 3d at 96 ("Even where allegations of unfair labor practices. . . present issues of

---

[10] Even after timely and properly exhausting the administrative process, the CBA severely limits the ability of a member of the bargaining unit to bring a complaint in court. (Compl. Ex. B at 69, 73).  By initiating the grievance process, Plaintiff waived his right to seek review of the University's action under the Administrative Procedures Act.  (See id. at 69).  Additionally, the CBA also limits the issues for which judicial review may be sought after the exhaustion of the administrative process.  (See id. at 73).  Plaintiff, as a member of the bargaining unit which selected the union as its exclusive bargaining agent, is bound by these agreed-upon limitations.

denial of due process of law, PERC has exclusive jurisdiction, and such a complaint is subject to dismissal."). As a result, Plaintiff cannot bring a claim for breach of the CBA or the implied covenants therein when he failed to exhaust his administrative remedies and the time for doing so has passed.  Therefore, Counts II and III of Plaintiff's Complaint must be dismissed with prejudice.

### E.  Plaintiff Fails to State a Claim for a Violation of Procedural Due Process

#### 1.  Plaintiff Fails to Plausibly Allege a Deprivation of Constitutional Rights

Count I of the Complaint alleges that Defendants Hyun, Llorens, and Gunter violated Plaintiff's right to procedural due process under the Fifth and Fourteenth Amendments.  (Compl. ¶¶ 60–71).[11]  College professors terminated mid-contract have interests in their continued employment that are safeguarded by due process. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 576–77 (1972).  In order to establish a violation of procedural due process under the Fourteenth Amendment, the Plaintiff must establish (1) "'a deprivation of a constitutionally-protected liberty or property interest'" and (2) "a 'constitutionally inadequate process.'"  Foxy Lady, Inc. v. City of Atlanta, Ga., 347 F.3d 1232, 1236 (11th Cir. 2003); see also Craig v. Selma City School Bd., 801 F. Supp. 585, 589-90 (S.D. Ala. 1992).  The "essential requirements of due process" are notice and a pre-termination opportunity to respond. See Cleveland Bd. of Educ. v.

---

[11] Plaintiff's allegations under Count I repeatedly reference the actions of the "Individual Defendants" as a group.  At a minimum, Plaintiff should be require to specifically plead how each individual Defendant's actions violated his constitutional rights.  Indeed, Plaintiff does not plead that several of the individual defendants had any role in the decision to terminate his employment. For example, as Plaintiff alleges, Gunter investigated the complaint of sexual harassment against Parfitt, but she did not make any decision related to his employment, the sanction that should be imposed for violated FGCU's policies, or the process that should be used in imposing that sanction. (See Compl. ¶¶ 37, 40–41 & Ex. F; Motion to Dismiss Ex. B).  Additionally, while Plaintiff alleges that Hyun was present at certain meetings with him, he does not allege what role, if any, Hyun had in the decision to terminate his employment.  (See Compl. ¶¶ 30, 42).  Indeed, the notice of intent to take disciplinary action and the notice of disciplinary action are both signed by Llorens, not any other Defendant.  (Motion to Dismiss Exs. B & C).  Thus, Plaintiff fails to plausibly allege sufficient facts to state a claim against each individual Defendant.

Loudermill, 470 U.S. 532, 546 (1985) (explaining that a "tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before a state or state agency may terminate the employee). "Requiring any more prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Id.; see also Harrison v. Wille, 132 F.3d 679, 684 (11th Cir. 1998) ("[A] full evidentiary hearing is not required.").

Further, "the law is well established that the mere failure to follow state procedures does not necessarily rise to the level of a violation of federal procedural due process rights." Maddox v. Stephens, 727 F.3d 1109, 1124 n.15 (11th Cir. 2013); Harris v. Birmingham Bd. of Educ., 817 F.2d 1525, 1528 (11th Cir. 1987) ("[W]e emphasize that the violation of a state statute outlining procedure does not necessarily equate to a due process violation under the federal constitution. If otherwise, federal courts would have the task of insuring strict compliance with state procedural regulations and statutes."); Jolibois v. Florida Int'l University Bd. of Trustees, 2016 WL 3542239, *4 (11th Cir. June 29, 2016) ("Jolibois's suspension and termination did not violate his procedural due process rights, because a violation of CBA procedures does not necessarily equate to a due process violation under the federal constitution.") (citation and internal quotation marks omitted).

Here, as explained above, Defendants satisfied the essential requirements of due process by providing Plaintiff with notice of the allegations against him, an explanation of FGCU's evidence, and a pre-termination opportunity to respond. Plaintiff was clearly provided notice of the allegations against him. On November 1, 2018, Plaintiff was informed that FGCU had received a complaint of sexual harassment against him. (Compl. ¶ 33; Motion Ex. A). On November 6, 2018, Defendant Gunter interviewed Plaintiff, questioning him "regarding the nature and extent of the sexual interactions" between Plaintiff and the Complainant who accused Plaintiff of violating

the Consensual Relationship Policy (Compl. ¶¶ 37, 40).   Plaintiff admitted to violating the Consensual Relationship Policy.  (Compl. Ex. F at 2).  On November 21, 2018, Defendant Gunter sent Plaintiff the investigative report, which provided additional notice by summarizing the allegations of misconduct levied against Plaintiff and providing the investigation's findings as well as an explanation of the evidence supporting those findings.  (Compl. ¶ 41, Ex. F).  On November 27, 2018, Plaintiff was provided with notice that FGCU intended to terminate his employment based on the findings from the investigation.  (Motion Ex. B).   In this notice, Llorens identified the contemplated disciplinary action (termination), the reason for that action, and an explanation of why the University was contemplating this action.  (Id.).   After providing Plaintiff with an opportunity to respond, Llorens provided notice to Plaintiff that he had reviewed Plaintiff's explanation, did not find it persuasive, and was going to terminate his employment on December 7, 2018.  (Motion Ex. C).  It also provided notice to Plaintiff that the grievance and arbitration process in the CBA applied to this decision.  (Id.).

In addition to the notice provided to Plaintiff, Plaintiff also was given numerous opportunities to be heard in response to this notice.  Plaintiff had an opportunity to respond during the interview with Defendant Gunter on November 6, 2018, after Plaintiff received notice of the complaint being investigated.  (Compl. Ex. F).  Likewise, after receiving written notice of the findings, evidence to support the findings, and an explanation of reason for the findings as well as written notice of the intent to terminate Plaintiff based on the findings of the investigation, Plaintiff had another opportunity to respond.  As a result, on November 30, 2018, Plaintiff provided a four-page written response outlining reasons he believed the intended action should not be taken.  (Complaint ¶ 46, Ex. H).  This letter was considered before the termination decision was made.  (Complaint ¶ 47; Motion Ex. C).

Most of Plaintiff's complaints are his disagreement with the result of the process given him. These allegations are insufficient to state a claim. As the Eleventh Circuit has recognized, "quarrel[ing] with the result of a proceeding does not state a claim that due process was not afforded[;] . . . procedural due process does not guarantee a particular result." Schiavo ex. rel. Schindler v. Schiavo, 403 F.3d 1289, 1295 (11th Cir. 2005) (per curiam). Likewise, Plaintiff's complaint also is premises on the alleged violations of the CBA, which is insufficient to state a claim for a constitutional deprivation. Jolibois, 2016 WL 3542239, *4. Finally, Plaintiff's complaint that Llorens was a biased decision maker also is insufficient for two reasons. First, Plaintiff has failed to plead any facts to support the conclusion that Llorens was biased. Second, as the Eleventh Circuit found in McKinney, bias of the decision maker does not amount to a procedural process violation unless there is no mechanism to challenge the bias. See 20 F.3d at 1562-63. As set forth below, Plaintiff had numerous mechanisms available to him to challenge any alleged bias of Llorens and Plaintiff failed to take advantage of these opportunities.

The Complaint establishes that Plaintiff received notice and an opportunity to be heard, which is all that is required under the Constitution. See Jolibois, 654 F. App'x at 466. Thus, there are no facts pled in the Complaint that plausibly suggest a deprivation of Plaintiff's procedural due process rights.

### 2. Plaintiff Failed to Take Advantage of Additional Procedural Protections

Even assuming if the pre-termination procedures were somehow deficient, Plaintiff's claim still fails because Plaintiff failed to take advantage of additional state remedies, which were available to cure any alleged defects. See Foxy Lady, Inc., 347 F.3d at 1238; Reams v. Irvin, 561 F.3d 1258, 1266 (11th Cir. 2009) ("It is well-settled that a constitutional violation is actionable under § 1983 'only when the state refuses to provide a process sufficient to remedy the procedural

deprivation.'"); <u>McKinney v. Pate</u>, 20 F.3d 1550, 1557, 1563 (11th Cir. 1994) (finding that courts "look to whether the available state procedures were adequate to correct the alleged procedural deficiencies").  This rule is based on the principle that "'the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora – agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation.'"  <u>Reams</u>, 561 F.3d at 1266; <u>see also</u> <u>Horton v. Bd. of County Comm'rs of Flagler County</u>, 202 F.3d 1297, 1300 (11th Cir. 2000).  "[T]he state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due."  <u>Cotton v. Jackson</u>, 216 F.3d 1328, 1331 (11th Cir. 2000).

"If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process."  <u>McKinney</u>, 20 F.3d at 1565.  Indeed, the Eleventh Circuit explained this principle as follows:

> The <u>McKinney</u> rule is not micro in its focus, but macro.  It does not look to the actual involvement of state courts or whether they were asked to provide a remedy in the specific case now before the federal court.  Instead, the <u>McKinney</u> rule looks to the existence of an opportunity – to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered.  If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so.

<u>Horton</u>, 202 F.3d at 1300; <u>see also</u> <u>Foxy Lady, Inc.</u>, 347 F.3d at 1239.  The Fourteenth Amendment merely requires the opportunity for procedural due process, not that the plaintiff actually take advantage of it.  <u>See</u> <u>Horton</u>, 202 F.3d at 1300. Therefore, even if there were procedural deficiencies in the pre-termination process, those defects are not actionable if there were adequate and available state law remedies, even if Plaintiff failed to take advantage of them.

In this case, Plaintiff has not pled in the Complaint that state law remedies were inadequate. (Compl. ¶¶ 60-71).  Instead, the Complaint and its attached exhibits establish that Plaintiff waived these remedies or failed to take advantage of them.  After his termination, Plaintiff elected to file a grievance under the CBA.  Pursuant to the CBA, the filing of a grievance waives the employee's right to seek judicial review of the University's decision under the Administrative Procedures Act or pursuant to other University regulations, policies, or procedures. (Compl. Ex. B at 69).  Thus, while Plaintiff could have sought judicial review in state court, see, e.g., Spiegel v. Univ. of S. Fla., 555 So. 2d 428, 428 (Fla. Dist. Ct. App. 2d 1989); Couchman v. Univ. of Cent. Fla., 84 So. 3d 445, 446–47 (Fla. Dist. Ct. App. 5th 2012) (concluding that the plaintiff could seek certiorari review, including a due process claim, as of right of a state university's decision in state court), Parfitt voluntarily waived this state remedy when he elected to file a grievance under the CBA. (Compl. Ex. B at 69).  As such, there was an adequate state remedy for the alleged procedural due process violation, but Plaintiff elected to waive it. See Reams, 561 F.3d at 1267; Foxy Lady, Inc., 347 F.3d at 1239.  As in McKinney, if Parfitt had not waived his state law remedies, "that forum might well have prevented [the alleged] violation of [the plaintiff's] procedural due process rights and thereby obviated the need for this suit."  McKinney, 20 F.3d at 1561.

Moreover, the grievance process itself provided Plaintiff with adequate remedies to remedy any alleged procedural violation.  However, again, Plaintiff failed to take pursue these remedies. After Plaintiff filed the grievance, he was given multiple additional opportunities to be heard through the written grievance as well as by attending two grievance meetings.  (Compl. Ex. J at 2; Ex. B at 71).  While the grievance was denied, that denial did not end the process available to Plaintiff.  According to Article 20.6(F) of the CBA, Plaintiff could have proceeded to arbitration if the Union had timely requested it.  (Compl. Ex. B at 72).  No such request was ever timely or

properly made.  Had Plaintiff properly requested arbitration, Plaintiff would have received a full hearing before an impartial arbitrator. (<u>Id.</u> at 72-73).  Plaintiff also would have had a limited right of judicial review pursuant to Florida Statutes § 682.13. (<u>Id.</u>).  As set forth above, however, Plaintiff failed to take advantage of this opportunity.

As a result, Plaintiff failed to show that the state remedies available to him were inadequate to remedy any alleged procedural deprivations and cannot state a claim for a procedural due process violation.  As a result, Count I must be dismissed.

### 3.    Defendants Hyun, Llorens, and Gunter Are Entitled to Qualified Immunity

The doctrine of qualified immunity provides "complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1193–94 (11th Cir. 2002) (quotation marks and citation omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation" <u>Id.</u> at 1194. "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to determine the validity of a qualified immunity defense as early in the lawsuit as possible." <u>Id.</u> (quotation marks and citation omitted).  Because there is no way to un-sue a state official, and the protections secured by immunity are lost if a suit is allowed to continue, courts have established "a heightened pleading requirement when a plaintiff brings a § 1983 complaint against officials acting in their individual capacities." <u>Washington v. Bauer</u>, 149 F. App'x 867, 870 (11th Cir. 2005) (quoting <u>Laurie v. Alabama Court of Criminal Appeals</u>, 256 F.3d 1266, 1275-76 (11th Cir. 2001)).

In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."

Id. at 1194 (quotation marks and citations omitted).  In analyzing whether the official was acting within her discretionary authority, courts assess "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."  Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).

Once the defendant establishes that he or she was acting within his or her discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. Lee, 284 F.3d at 1194. To defeat the defense of qualified immunity, the plaintiff must establish that: (1) the facts alleged show the defendant's conduct violated a constitutional right, and (2) at the time of violation, the constitutional right was clearly established.  Id. (citing Saucier v. Katz, 533 U.S. 194 (2001)).

Here, Plaintiff alleges that Defendants were acting within their discretionary authority, (Compl. ¶¶ 18, 27, 82), and thus, the burden shifts to Plaintiff to show that Defendants are not entitled to qualified immunity.  Plaintiff has not and cannot meet this burden.  First, as discussed above, Plaintiff has failed to establish any violation of procedural due process.  He has not plausibly alleged that he was deprived of the appropriate notice and opportunity to be heard as required under procedural due process, nor has the state denied him relief from such a deprivation as required to establish a violation of a constitutional right.  Where, as here, there is no violation of a constitutional right, qualified immunity should be granted and there is no need to consider whether the constitutional right in question was clearly established. Hope v. Pelzer, 536 U.S. 730, 793 (2002).

Should the inquiry proceed to the second step of the qualified immunity analysis, Plaintiff also has not established that the rights violated were clearly established at the time the decisions

were made.  A clearly established right is one where "a reasonable official would understand that what he is doing violates that right." Id. at 739.  In addition, in order to find a violation of clearly established law, the court may only look to decisions of the United States Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida. See Carruth v. Bentley, 942 F.3d 1047, 1054 (11th Cir. 2019).  There are no such decisions establishing that, under the facts pled in this case, Defendants violated clearly established law.

There is no decision of the Supreme Court of Florida, Eleventh Circuit, or United States Supreme Court that would establish that Defendants violated any clearly established right by the facts of this case.  Specifically, in summary,[12] the Complaint and its exhibits demonstrate the following facts:

- 11/1/2018 – Plaintiff was provided with notice of the sexual harassment complaint made against him by an FGCU student.

- 11/6/2018 – Plaintiff was given an opportunity to be heard regarding the complaint.

- 11/21/2018 – Plaintiff was provided notice of the findings of the investigation, the evidence reviewed, and reason for those findings.

- 11/27/2018 – Plaintiff was provided with notice of the intent to terminate his employment, his opportunity to be heard prior to that decision being made, the reason the University was contemplating his termination, and an explanation of why the University was contemplating his termination.

- 11/30/2018 – Plaintiff was provided with an opportunity to be heard prior to the decision to terminate his employment.

---

[12] Defendants have discussed in detail each of these events in this Motion.  For the purpose of this argument, they are presented here in summary form.

- 12/5/2018 – After reviewing Plaintiff's response, Llorens provided notice of the decision to terminate Plaintiff's employment, the reason for the decision, and an explanation of why the University reached this decision. It also explained that this decision was subject to the grievance and arbitration provision of the CBA.

- 12/7/2018 – Plaintiff's employment was terminated.

- 12/18/2018 – Plaintiff filed a grievance challenging his termination under the CBA. In doing so, he voluntarily waived any other state remedies by the express language of the CBA.

- 1/10/2019 – Plaintiff had an opportunity to be heard at a grievance meeting. During the grievance process, Plaintiff had the right to present any evidence in support of the grievance and, upon written request, to seek copies of any documents relevant to the grievance.

- 1/25/2019 – Plaintiff had another opportunity to be heard through another grievance meeting.

- 2/19/2019 – Plaintiff received notice of the denial of the grievance, including an explanation of the reason why each violation was unfounded and identification of the evidence used to reach that determination.

- 3/21/2019 – The deadline under the CBA for Plaintiff and the Union to file a request for arbitration. Plaintiff failed to obtain the Union's request to proceed to arbitration.

Based on these facts, there is no decision of the Supreme Court of Florida, Eleventh Circuit, or United States Supreme Court that would have provided notice to Defendants that there is a violation of the due process clause under these circumstances. Because Plaintiff cannot establish

24

any violation of a clearly established constitutional right, Defendants Hyun, Llorens, and Gunter

are entitled to qualified immunity.  Thus, Count I of Plaintiff's Complaint must be dismissed with

prejudice.

## III.    Conclusion

WHEREFORE, Defendants, FLORIDA GULF COAST UNIVERSITY BOARD OF

TRUSTEES, FLORIDA GULF COAST UNIVERSITY, EUNSOOK HYUN, JAMES

LLORENS, and PRECIOUS GUNTER, respectfully request that the Court grant its Motion to

Dismiss, dismiss the Complaint against all Defendants with prejudice, and provide all other relief

deemed appropriate and just.

Dated this 16th day of December, 2019.

Respectfully submitted,

*/s/Sacha Dyson*
GREGORY A. HEARING
Florida Bar No.: 817790
gregory.hearing@gray-robinson.com
SACHA DYSON
Florida Bar No.:  509191
sacha.dyson@gray-robinson.com
KEVIN M. SULLIVAN
Florida Bar No.:  1003812
kevin.sullivan@gray-robinson.com
GRAYROBINSON, P.A.
401 E. Jackson Street, Suite 2700
P.O. Box 3324
Tampa, Florida 33602 (33601-3324)
TEL:  (813) 273-5000
FAX: (813) 273-0072
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of December, 2019 I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of

electronic filing to the following:

Floyd Yarnell, Esq.
Don Peterson, Esq.
Yarnell & Peterson, P.A.
3431 Pine Ridge Road, Suite 101
Naples, FL 34109
FloydYarnell@NaplesLaw.us
Servic@NaplesLaw.com
ChrisRelli@NaplesLaw.us

Timothy Edwards, Esq.
Edwards Law Group, LLC
873 Peregrine Circle
Oregon, WI  53575
edwards@tdemadison.com
**ATTORNEYS FOR PLAINTIFF**

*/s/Sacha Dyson*_____
Attorney