UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTOPHER PARFITT, individually

        Plaintiff,

v.                                Case No.:  2:19-cv-727-FtM-38NPM

FLORIDA GULF COAST
UNIVERSITY BOARD OF
TRUSTEES, FLORIDA GULF
COAST UNIVERSITY, EUNSOOK
HYUN, JAMES LLORENS and
PRECIOUS GUNTER,

        Defendants.

_____/

## OPINION AND ORDER[1]

Before the Court is Defendants' Motion to Dismiss (Doc. 59) and Plaintiff Christopher Parfitt's response in opposition (Doc. 62).  Also here are the parties' responses (Docs. 64; 65) to the Court's order for supplemental briefing (Doc. 63).  For these reasons, the Court grants the Motion.

## BACKGROUND[2]

This is an employment termination dispute.  Parfitt was a professor at Florida Gulf Coast University ("FGCU").  While employed at FGCU—but before becoming a

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] These are the facts from the First Amended Complaint (the "Complaint"), which is the operative pleading.  (Doc. 53).  The Court accepts all well-pled facts as true.  *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).  Many exhibits from the initial pleading are incorporated by reference in the Complaint.  (Doc. 53 at 3 n.1).  So the Court considers those exhibits—relying on them to the extent that they conflict with the Complaint.  *E.g.*, *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).

professor—he had a sexual relationship with a graduate student (the "Student").[3]  When the relationship ended, the Student filed a sexual harassment complaint against Parfitt.

After an investigation, Parfitt was fired for violating FGCU's Consensual Relationship Policy (the "Policy").  (Docs. 1-7; 1-9).  Where relevant, the Policy follows: "Any employee with supervisory responsibilities is prohibited from engaging in an undisclosed amorous, dating, intimate or sexual relationship with an employee, student, volunteer or contractor whom he/she supervises."  (Doc. 1-4 at 3).  Violating the Policy is misconduct that "may result in disciplinary action up to and including separation from" FGCU.  (Doc. 1-4 at 3).  But if an employee—like Parfitt—is covered by FGCU's Collective Bargaining Agreement ("CBA") with the applicable Union, the CBA may set forth the pertinent disciplinary procedure.  (Doc. 1-4 at 3).

Defendants Eunsook Hyun, James Llorens, and Precious Gunter (together the "Individuals") are administrators at FGCU involved (in one way or another) with investigating the harassment complaint and terminating Parfitt.  Gunter investigated the case and issued a report, which determined Parfitt violated the Policy.  (Doc. 1-6).  One week later, Llorens gave Parfitt a notice of intent to fire him.  (Doc. 1-7).  Parfitt had a chance to respond, and he submitted a reconsideration request.  (Doc. 1-8).  Unconvinced, Llorens terminated Parfitt.  (Doc. 1-9).

Afterward, Parfitt filed a grievance, alleging violations of the CBA.  (Doc. 1-10).  That outcome was unfavorable for him.  (Doc. 1-11).  So Parfitt made a last-ditch effort

---

[3] It is unclear what Parfitt's position was during the relationship.  He worked at FGCU then and taught courses.  (Docs. 53 at 3, 11).  But the relationship ended the month before his associate professor position began.  (Docs. 53 at 8; 1-1 at 2).

for relief under the CBA—he demanded arbitration.  (Doc. 1-12).  While the Union did not sign his arbitration demand, it did not oppose the request.  (Doc. 1-14).

FGCU and its Board of Trustees (the "Board") are named Defendants.  There is no remaining claim against FGCU.  But Parfitt brings Count 2 against the Board, seeking to compel arbitration of the CBA under state law.  While unclear from the Complaint, Parfitt apparently intended to allege Count 2 against the Individuals as well.  In Count 1, Parfitt sues the Individuals in their personal capacity under 42 U.S.C. § 1983.

## LEGAL STANDARD

"The Eleventh Amendment restricts the judicial power under Article III."  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72-73 (1996).  So asserting Eleventh Amendment immunity tests subject-matter jurisdiction.  *Seaborn v. State of Fla., Dep't of Corr.*, 143 F.3d 1405, 1407 (11th Cir. 1998).  Rule 12(b)(1) governs motions to dismiss for lack of subject matter.  *Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235, 1238 (M.D. Fla. 2019).  These challenges take two forms—facial and factual.  *Id.* at 1239.  On facial attacks, like this one, "the Court takes the allegations in the complaint as true."  *Id.*

Motions to dismiss for failure to state a claim follow the familiar Rule 12(b)(6) standard.  A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

**DISCUSSION**

As discussed, FGCU must be dismissed from the case, while Counts 1 and 2 are dismissed without prejudice.

## A. Improper Defendant

Before addressing the dispute, the Court turns to the parties' agreement: the Complaint improperly identifies FGCU as a Defendant. (Docs. 59 at 1 n.1; 62 at 2). The Board—not FGCU—is the correct entity to sue. Fla. Stat. § 1001.72(1). So any claim alleged against FGCU is dismissed without prejudice. *U.S. E.E.O.C. v. Fla. Gulf Coast Univ.*, No. 2:06-cv-326-FtM-29SPC, 2007 WL 2077577, at *2 (M.D. Fla. July 16, 2007); *Souto v. Fla. Int'l Univ. Found., Inc.*, No. 19-21935-CIV-LENARD/O'SULLIVAN, 2020 WL 1036537, at *11-12 (S.D. Fla. Mar. 3, 2020). And FGCU is terminated from the case.

## B. Sovereign Immunity

Next comes the contested matters. To start, the Board contends it has sovereign immunity on Count 2, which seeks to compel arbitration. Even if arbitration is proper, says the Board, this Court lacks jurisdiction to compel it. Parfitt counters that a narrow exception applies and, if not, the Board waived sovereign immunity. The Court agrees with the Board.

The Eleventh Amendment protects a nonconsenting State from suit in federal court by its own citizens. *E.g.*, *Hans v. Louisiana*, 134 U.S. 1, 10, 20-21 (1890). Likewise, "Eleventh Amendment immunity bars suits brought in federal court when . . . an 'arm of the State' is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). Usually at this point, courts consider the four-factor test set out in *Manders* to decide

whether an entity qualifies as an "arm of the State." *Williams v. Dist. Bd. of Trs. of Edison Cmty. Coll., Fla.*, 421 F.3d 1190, 1192 (11th Cir. 2005). But countless cases already did the heavy lifting.

The Board is an arm of the State entitled to Eleventh Amendment immunity. The Eleventh Circuit weighed in on whether Florida colleges act as arms of the State. And twice, the Eleventh Circuit concluded they do. *Univ. of S. Fla. Bd. of Trs. v. CoMentis, Inc.*, 861 F.3d 1234, 1235-37 (11th Cir. 2017); *Williams*, 421 F.3d at 1194-95. What is more, this Court just decided the Board is an arm of the state. *Brown v. Fla. Gulf Coast Univ. Bd. of Trs.*, No. 2:18-cv-157-FtM-29MRM, 2019 WL 2084522, at *3 (M.D. Fla. May 13, 2019). So the Board has sovereign immunity unless an exception applies or immunity was waived, which leads to Parfitt's arguments.

*1. Ex Parte Young*

Mainly, Parfitt says this case falls into a narrow exception to sovereign immunity set out in *Ex Parte Young*, 209 U.S. 123 (1908). The Board disagrees. And the Court does too.

"When a plaintiff challenges a state official's action on federal grounds, *Ex Parte Young* allows the plaintiff to seek prospective injunctive relief." *Nat'l Ass'n of the Deaf v. Florida*, 945 F.3d 1339, 1351 (11th Cir. 2020). There is an exception to the *Ex Parte Young* doctrine "that prohibits a plaintiff from seeking injunctive relief when he alleges merely 'that a state official has violated *state* law.'" *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)). In any event, the doctrine only applies if "a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Fla. Ass'n*

*of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000).  "In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct."  *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999).

Here, it is unclear who Parfitt brings this claim against—the Complaint never specifies.  At least in part, however, Count 2 is pled against the Board.  And as it relates to the Board, there is one dispositive problem for Parfitt.

As an arm of the state, Parfitt cannot bring Count 2 against the Board under *Ex Parte Young*.  That is not a claim for relief against a state official; it is a claim against the State itself (i.e., the Board).  And it is black-letter law the doctrine does not permit suit against an arm of the state.  *E.g.*, *Pennhurst*, 465 U.S. at 100 ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").  While Parfitt tries to stretch the *Ex Parte Young* doctrine well beyond its settled boundary, the Court ain't taking the bait.  *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) ("The doctrine . . . does not apply 'when the state is the real, substantial party in interest.'" (quoting *Pennhurst*, 465 U.S. at 101)).

Parfitt never addresses this issue in his briefing.  Instead, he says Count 2 is also alleged against the Individuals (who are state officials).  But that is a red herring.  Even if Count 2 could somehow be brought against the Individuals, it cannot stand against the Board in the face of sovereign immunity.  As applied to the Board, therefore, Count 2 is not passable under *Ex Parte Young*.  *E.g.*, *Page v. Hicks*, 773 F. App'x 514, 518 (11th Cir. 2019) (per curiam) ("Because the Board is an 'arm of the state' itself—and not an

individual officer—[Plaintiff's] request for injunctive relief against the Board fails."); *Eubank v. Leslie*, 210 F. App'x 837, 844-45 (11th Cir. 2006) (per curiam) ("State agencies, however, are never subject to unconsented suit, even under the doctrine of *Ex parte Young*.").

### 2. *Waiver*

Next, Parfitt contends the Board waived sovereign immunity.  Unsurprisingly, the Board says it didn't.  On this question, the Court does not see a valid waiver.

"The test to determine if a state has waived its sovereign immunity 'is a stringent one.'"  *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012) (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999)).  "A waiver of Eleventh Amendment immunity must specifically permit suits in federal court."  *Id.*  And "a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation."  *Fla. Prepaid*, 527 U.S. at 676.  In short, "absent an express waiver by the state, the Eleventh Amendment bars state law claims against a state in federal court."  *Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1287 (11th Cir. 2003).  "For these reasons, a waiver of sovereign immunity 'will be strictly construed, in terms of its scope, in favor of the sovereign.'"  *Sossamon v. Texas*, 563 U.S. 277, 285 (2011) (quoting *Lane v. Peña*, 518 U.S. 187, 192 (1996)).

According to Parfitt, the CBA's arbitration provisions waive sovereign immunity.  To be sure, a state can contract to waive sovereign immunity over suits related to a contract.[4]  *Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1213 (10th

---

[4] This statement presumes the contract operates as an effective waiver.  In other words, the state (or state entity) has the authority to waive sovereign immunity by contract.  *See* Tejas N. Narechania, *An Offensive Weapon?: An Empirical Analysis of the "Sword" of State Sovereign Immunity in State-Owned Patents*, 110 Colum. L. Rev. 1574, 1607 & n.196 (2010).  No party makes argument on this point.

Cir. 2013).  Courts have held an arbitration clause may act as a waiver.  *Bd. of Trs. Sabis Int'l Sch. v. Montgomery*, 205 F. Supp. 2d 835, 846 (S.D. Ohio 2002).  Yet the type of provision is not as determinative as the language used because waivers of sovereign immunity must show the state's clear intent "to submit to federal jurisdiction."  *See Baum Research & Dev. Co. v. Univ. of Mass. at Lowell*, 503 F.3d 1367, 1370 (Fed. Cir. 2007); *see also Allen v. Cooper*, 895 F.3d 337, 347 (4th Cir. 2018).  So a close analysis of the contractual language is necessary to determine whether there was a clear waiver.  *See Pettigrew*, 722 F.3d at 1213-14 (citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990)).

Parfitt only directs the Court to one portion of the CBA:

> Venue.  For purposes of venue in any judicial review of an arbitrator's decision issued under this agreement, the parties agree that such an appeal *shall be filed in the courts in Lee County, Florida*, unless both parties specifically agree otherwise in a particular instance.

(Doc. 1-2 at 76) (emphasis added).  This language, however, falls well short of a "clear declaration that [the state] intends to submit itself to [federal] jurisdiction."  *Fla. Prepaid*, 527 U.S. at 676 (internal quotation marks and citation omitted).  While this Court is in Lee County, nothing in the provision expressly contemplates a federal forum.  And it is well established a state's consent must be "unequivocally expressed" and not found by implication.  *Sossamon*, 563 U.S. at 284.  For instance, a state consenting to suit "in any court of competent jurisdiction" or "in all courts of law and equity" are both not enough to waive Eleventh Amendment immunity.  *Maynard*, 342 F.3d at 1288.  The provision here is no clearer.  At most, it implies a federal forum is proper—which is not enough.  *Sossamon*, 563 U.S. at 284.

As a corollary, the clause may be reasonably interpreted to permit review of arbitration only by the local state court.  That would not operate as a waiver of Eleventh Amendment immunity.  *Id.* (noting a state may consent to suit in its own courts without waiving immunity from suit in federal courts).  And this is a reasonable interpretation because Florida courts often review public employee collective bargaining grievances before and after arbitration.  *E.g.*, *City of Hollywood v. Perrin*, No. 4D19-136, 2020 WL 1451995 (Fla. Dist. Ct. App. Mar. 25, 2020) (reviewing order compelling arbitration); *Lake City Fire & Rescue Ass'n, Local 2288 v. City of Lake City, Fla.*, 240 So. 3d 128 (Fla. Dist. Ct. App. 2018) (reviewing arbitrator's decision).

At bottom, waiver is found only "by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction."  *Feeney*, 495 U.S. at 305 (alteration accepted and citation omitted).  Because Parfitt has not pointed to any clear and unequivocal waiver of the Board's sovereign immunity in the CBA, the Court will not find one by implication.

Without explanation, Parfitt relies just on *Sabis*.  That case provided no legal support for its decision.  But it seemed to imply arbitration clauses waive sovereign immunity in federal court because of the Federal Arbitration Act ("FAA").  *Baum Research & Dev. Co. v. Univ. of Mass. at Lowell*, No. 1:02-CV-674, 2006 WL 461224, at *4 (W.D. Mich. Feb. 24, 2006) (noting the lack of analysis).  The FAA, however, does not apply to collective bargaining agreements like the CBA.  *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 642 F.3d 1344, 1353 n.4 (11th Cir. 2011); *but see Wiregrass Metal Trades Council AFL-CIO v. Shaw Envtl. & Infrastructure, Inc.*, 837 F.3d 1083, 1087 n.1 (11th Cir. 2016)

(recognizing some ambiguity in Eleventh Circuit precedent on the issue). So the case differs. Moreover, Parfitt seeks to compel arbitration under state, not federal, arbitration law. Finally, as the Board notes, including the arbitration provision was not a voluntary act showing an intent to submit to federal court. Rather, the arbitration process is required by state law in every public employee collective bargaining agreement. Fla. Stat. § 447.401; *Pub. Emps. Relations Comm'n v. Dist. Sch. Bd. of DeSoto Cty.*, 374 So. 2d 1005, 1013 (Fla. Dist. Ct. App. 1979) ("[A] collective bargaining agreement must provide a procedure for binding arbitration to settle disputes concerning the discharge of a public employee."). And *Sabis*' vague reference to *Lapides*, along with Parfitt's single-conclusory-sentence argument, is not enough to convince the Court that including an arbitration provision amounted to a voluntary waiver of sovereign immunity. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002) (holding a state may waive sovereign immunity through voluntary litigation conduct (e.g., by removing a case)).

In sum, the Board has sovereign immunity. Because this Court lacks jurisdiction to compel the Board to arbitrate, Count 2 is dismissed without prejudice.

## C. Shotgun Pleading

Finally, the Complaint brings a procedural due process claim in Count 1. Parfitt alleges Count 1 collectively against the Individuals for failing to provide him with notice and opportunity to be heard before his termination. In part, the Individuals argue the Complaint should be dismissed because it alleges Count 1 against them all collectively, without identifying how their actions violated Parfitt's due process rights. (Doc. 59 at 12 n.11). Parfitt does not address that point, focusing instead on the merits of the dispute. The Court need not reach the merits of Count 1 yet because it is an improper shotgun

pleading that Federal Rules 8 and 10 prohibit.  *See Toth v. Antonacci*, 788 F. App'x 688, 690-91 (11th Cir. 2019) (per curiam).

Parfitt pleads this claim collectively, incorporating every preceding paragraph and making no distinction between how each Individual is liable.  In other words, Count 1 is a "quintessential 'shotgun' pleading."  *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).  The Complaint alleges a single count against the three Individuals as a group without identifying how any of their conduct violated Parfitt's due process right.  *See McDill v. Bd. of Padrons & Paroles*, No. 2:18-cv-597-ECM, 2019 WL 5616907, at *1-2 (M.D. Ala. Oct. 30, 2019) (dismissing a complaint for this reason); *Haygood v. Orange Cty. Pub. Schs.*, No. 6:16-cv-2105-Orl-37GJK, 2017 WL 1541296, at *2 (M.D. Fla. Apr. 28, 2017) (same); *Rodriguez v. Carrot Express Midtown, LLC*, No. 19-cv-24931-BLOOM/Louis, 2019 WL 7293360, at *3 (S.D. Fla. Dec. 30, 2019) (same).  This makes it impossible for the Individuals to know which allegations support the due process claim against them.

Take Gunter for example.  The only indication of her involvement here was the investigation and report, which determined Parfitt violated the Policy.  (Docs. 53 at 7-8; 1-6).  There is no hint that Gunter participated in the decision to fire Parfitt or controlled the process beyond determining a Policy violation occurred—a decision based on his own admission.  (Docs. 53 at 7-8; 1-6 at 3).[5]  Because Parfitt pled Count 1 collectively, however, Gunter is allegedly responsible for everything—even the actions of Llorens and Hyun.  Speaking of Hyun, the Complaint does not mention her involvement at all.  It simply alleges Hyun was at certain meetings and called Parfitt in for their first meeting a month before his termination.  But it is unclear what actions expose her to liability for a due

---

[5] Shortly after the investigative report issued, Parfitt confirmed he admitted to violating the Policy.  (Doc. 1-8 at 2 ("I admitted to violating University Policy 1.007 during the investigation.")).

process violation.  And the lack of clarity does not stop there.  A portion of Parfitt's due process claim revolves around the disregard of his arbitration demand.  Yet the Complaint itself says one Defendant did not ignore the demand.  (Doc. 53 at 12 ("With one exception, the Individual Defendants and FGCU ignored this [arbitration] request.")).  It is unclear who that Defendant was.  In short, the collective or group pleading does not give each of the Individuals "fair notice of the allegations against" them and the grounds on which the claims rest; so Count 1 must be replead.  *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins.*, 953 F.3d 707, 732 (11th Cir. 2020).

Group pleading is appropriate sometimes without running afoul of the shotgun pleading rule.  *Id.* at 733.  For instance, collective allegations are permissible when a "complaint can be fairly read to aver that all defendants are responsible for the alleged conduct."  *Id.* (citation omitted).  But here, the result is problematic.

The Individuals raise qualified immunity as a defense.  They are each entitled to a decision on that matter as soon as possible.  *E.g.*, *Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018).  Parfitt does not dispute the Individuals were all acting within their discretionary authority.   So the burden shifts for Parfitt to show qualified immunity is improper.  *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009). "To defeat qualified immunity, '(1) the relevant facts must set forth a violation of a constitutional right, and (2) the defendant must have violated a constitutional right that was clearly established at the time of defendant's conduct.'"  *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (quoting *Taylor v. Hughes*, 920 F.3d 729, 732 (11th Cir. 2019)).  Importantly, "each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions."  *McDowell v. Gonzalez*, No. 19-

cv-23110-BLOOM/Louis, 2019 WL 6497366, at *6 (S.D. Fla. Dec. 3, 2019) (quoting *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018)).  And courts "evaluate a given defendant's qualified-immunity claim, considering only the actions and omissions in which that particular defendant engaged."  *Id.* (quoting *Alcocer*, 906 F.3d at 951).

Yet the Court cannot decide that issue given the Complaint's shotgun nature. Without pure speculation about who did what, the Court cannot determine the conduct each Individual allegedly engaged in to violate Parfitt's due process right.  Perhaps the Court could—like the Complaint and briefing—analyze qualified immunity for the Individuals collectively.  To engage in that hodgepodge analysis can lead to a flawed result though.  *E.g.*, *Norris v. Williams*, 776 F. App'x 619, 622 (11th Cir. 2019) (per curiam) (reversing a decision that treated defendants collectively and assumed each defendant participated in every action).  What is more, it is not the Court's job to help Parfitt bear his burden by hunting through the Complaint to cobble together an argument to defeat qualified immunity.

Exacerbating the problem with Count 1, Parfitt apparently intended to bring Count 2 against the Individuals.  (Doc. 65 at 2 n.1).  But nothing in the Complaint suggests how that claim applies to them.  And as the Individuals argue, it is unclear how Parfitt can bring a claim to compel them to arbitrate under the CBA.  Thus, to whatever extent Parfitt tried to bring Count 2 against the Individuals, it is insufficient and must be repled too.

As a result, Counts 1 and 2 are dismissed without prejudice so Parfitt can fix the deficiencies.  The amended complaint should articulate the allegations as they relate to each Defendant and cause of action.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 59) is **GRANTED**.

   a. Defendant Florida Gulf Coast University ("FGCU") is **DISMISSED without prejudice**.  The Clerk is **DIRECTED** to terminate FGCU from this case.

   b. Counts 1 and 2 are **DISMISSED without prejudice**.

2. Plaintiff must **FILE** an amended complaint **on or before April 29, 2020**. **Failing to file a timely amended complaint will result in the case being closed without further notice**.

**DONE** and **ORDERED** in Fort Myers, Florida this 15th day of April, 2020.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record