## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

CHRISTOPHER PARFITT,

      Plaintiff,

v.                             **Case No.:  2:19-cv-727-FtM-38NPM**

JAMES LLORENS,

      Defendant.

_____/

### DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
### SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

Defendant, JAMES LLORENS ("Llorens" or "Defendant"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves to dismiss the claims in the Second Amended Complaint (Dkt. No. 67; SAC) of Christopher Parfitt ("Parfitt" or "Plaintiff"). As addressed below, Plaintiff's claims fail as a matter of law and the Second Amended Complaint must be dismissed with prejudice.

### MEMORANDUM OF LAW

### I.    Plaintiff Has Failed to Cure the Deficiencies in His Complaint

On February 27, 2020, Defendants moved to dismiss Plaintiff's Amended Complaint. (See Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 59)).  On April 15, 2020, the Court entered an Order granting the Motion.  (See Order (Dkt. No. 66)).  Specifically, the Court dismissed Florida Gulf Coast University from the case,  concluded that Plaintiff's claim to compel arbitration against the Board of Trustees of FGCU was barred by sovereign immunity, and concluded that Plaintiff's Amended Complaint was a shotgun pleading.  The Court provided Plaintiff with an opportunity to attempt to cure these deficiencies, if possible.  (Id. at 13).

On April 24, 2020, Plaintiff filed the Second Amended Complaint.  In the Second Amended Complaint, Plaintiff has dropped all of the parties except for Defendant Llorens.  Plaintiff continues to bring a procedural due process claim against Llorens pursuant to 42 U.S.C. § 1983, this time divided into Counts I and II.  (See SAC ¶¶ 60–75).  In Count III, Plaintiff again attempts to plead a petition to compel arbitration under Florida Statutes § 682.03, now asking this Court to compel Llorens to direct the Board to arbitrate Plaintiff's breach of contract claim under the collective bargaining agreement ("CBA") between the Board and the United Faculty of Florida. (See id. at 16–17 & ¶ 6).

Despite the opportunity to replead provided by this Court, Plaintiff still cannot state a claim against Defendant Llorens as a matter of law.  First, as to Plaintiff's state law claim against Defendant Llorens in his official capacity, the Court does not have jurisdiction over this claim. The result is not different whether Plaintiff pleads the claim against the Board, which already has been dismissed by this Court, or a state official in his official capacity, as Plaintiff has attempted to do in the Second Amended Complaint.  The Eleventh Amendment bars Plaintiff from bringing a state law claim against a state official in federal court.

Second, Plaintiff's SAC fails to state a procedural due process claim against Defendant Llorens.  Defendant Llorens provided Plaintiff with notice and several opportunities to be heard both before and after his termination.  Plaintiff has not and cannot plead facts sufficient to state a plausible procedural due process claim or overcome Defendant's well-established qualified immunity.

Therefore, Plaintiff's Second Amended Complaint must be dismissed.

## II.     Facts Alleged in the Second Amended Complaint[1]

### A.     Llorens Notifies Plaintiff of a Complaint Filed Against Him

Plaintiff was a non-tenured professor.  (SAC ¶ 14, Compl. Ex. A).[2]  On October 29, 2018, Precious Gunter ("Gunter"), the Director of FGCU's Office of Institutional Equity and Compliance, received a complaint through the University's Ethics Point Hotline.  (Compl. Ex. F at 1).  The complaint stated that Plaintiff engaged in a sexual relationship with a student in the program that Plaintiff supervised.  (Id.).  Under FGCU's Consensual Relationship Policy, "any employee with supervisory responsibilities is prohibited from engaging in an undisclosed amorous, dating, intimate or sexual relationship with an employee, student, volunteer or contractor whom he/she supervises."[3]  (Compl. Ex. D at 2).  This policy also provides that "[t]he University has determined that there is an inherent conflict of interest when a faculty member and a student simultaneously maintain both an educational relationship and a consensual dating, amorous, intimate, or sexual relationship."  (Id. at 3).  As a result, the University "prohibits simultaneous participation in both roles."  (Id.).  "[E]ngaging in such misconduct may result in disciplinary action up to and including separation from the University."  (Id.).

---

[1] Allegations in the SAC are cited solely for purposes of this Motion to Dismiss, and should not be construed as admissions as to such allegations' truthfulness.  Indeed, many of the allegations in the SAC are indisputably false.  Nonetheless, some of these allegations are cited herein for the purpose of this motion.  Plaintiff also makes numerous allegations, particularly related to the details of his purported relationship with an FGCU student, that are wholly impertinent and irrelevant to the claims before this Court.  (See, e.g., SAC ¶¶ 34, 42–43; Compl. Ex. H). These allegations should be struck under Rule 12(f).  There is no legitimate reason for including these facts, including the identity of the student who complained that Plaintiff sexually harassed her, in this SAC challenging the process related to Plaintiff's termination.

[2] Plaintiff has incorporated the exhibits attached to the Complaint (Dkt. No. 1) by reference into the SAC.  (SAC ¶ 14 n.1).  A district court can consider exhibits attached to a complaint in ruling on a motion to dismiss.  If the allegations of the complaint conflict with the contents of an exhibit, the exhibit controls.  See Crenshaw v. Lister, 556 F.3d 1283, 1292 (11th Cir. 2009).

[3] The policy defines supervisor as "[a]nyone who oversees, instructs, advises, directs or evaluates the employment or educational progress of faculty, staff, students, volunteers, and/or contractors."

On November 1, 2018, Plaintiff met with Eunsook Hyun ("Hyun"), the Dean of the College of Education at FGCU, and Defendant Llorens, the Interim Provost and Vice President for Academic Affairs for FGCU.  (SAC ¶¶ 2, 30–31).  During the meeting, Defendant Llorens read a document to Plaintiff which informed Plaintiff that FGCU had received a complaint of sexual harassment against him, FGCU would be conducting a prompt investigation, and Plaintiff was placed on administrative leave with pay pending the outcome of the investigation.  (Id. ¶ 33; Motion to Dismiss Ex. A).[4]

### B. FGCU Investigates the Student's Complaint and Provides Plaintiff with an Opportunity to be Heard

On November 6, 2018, Gunter interviewed Plaintiff in connection with the investigation into his alleged misconduct.  (SAC ¶ 37).  During the investigation, Gunter received additional information regarding Plaintiff that alleged inappropriate relationships with two other students.  (Id. ¶ 38; Compl. Ex. F at 1).  In addition to interviewing Plaintiff, the Complainant, and the two other students, Gunter reviewed a voicemail, emails, and text messages exchanged between Plaintiff, the Complainant, and one of the other students.  (Compl. Ex. F at 2).  Plaintiff admitted to engaging in the sexual relationship with the Complainant while in a supervisory capacity and violating the Consensual Relationship Policy.  (Id.).

On November 21, 2018, Gunter issued an investigative report, which summarized the allegations of misconduct levied against Plaintiff and provided the investigation's findings.  (SAC ¶ 40, Compl. Ex. F).  Gunter concluded, based, in part, on Parfitt's own admission, that Plaintiff clearly violated the Consensual Relationship Policy, and she explained the basis for this conclusion:

---

[4] As Exhibit E to the Complaint is difficult to read, Defendant has attached a true and correct copy of this document as Exhibit A to this Motion.

The [Plaintiff] served as the Complainant's Professor and Supervisor. He also served on her dissertation committee. While in a supervisory capacity, the [Plaintiff] engaged in a sexual relationship with the Complainant whom is a student in the program that he supervised. The [Plaintiff] failed to disclose the existence of this sexual relationship thus taking no steps to alleviate the inherent conflict of interest. The Complainant stated that due to the [Plaintiff's] position and promises that he made to assist her with future employment, etc., she felt obligated to engage in their sexual relationship out of fear of retaliation. Here, whether that fear truly existed is irrelevant because the [Plaintiff] admitted to engaging in the sexual relationship while in a supervisory capacity. As such, the evidence is sufficient to support a finding of a policy violation.

(Compl. Ex. F at 2).  A copy of the report was sent electronically to Plaintiff.  (Id. at 1).

### C.   The University Notifies Plaintiff of Intent to Terminate and Provides Him with an Opportunity to be Heard Before Terminating His Employment

On November 27, 2018, Llorens and Hyun met with Plaintiff and provided him with a letter which notified him of the University's intent to terminate Plaintiff's employment, effective at the close of business on December 7, 2018. (SAC ¶ 41; Motion to Dismiss Ex. B).[5]  Specifically, this letter provided:

- Defendant Llorens reviewed "the case against [Parfitt] alleging sexual harassment," which included Plaintiff's admission that he violated the University's Consensual Relationship Policy.

- "In general, [Parfitt's] actions [we]re found to be inconsistent with the University's goals of adherence to acceptable practices and policies as well as reasonable standards of integrity and professionalism."

- As a result, Defendant Llorens provided Plaintiff with express notice of the University's intent to take disciplinary action before the disciplinary action was imposed.

---

[5] Plaintiff signed the letter to verify its receipt on November 27, 2018.  (Motion to Dismiss Ex. B).  As Exhibit G to the Complaint is difficult to read, Defendant has attached a true and correct copy of this document as Exhibit B to this Motion.

(Motion to Dismiss Ex. B).  Defendant Llorens further explained that the CBA provides an employee may be terminated upon just cause and just cause is defined as misconduct.  (Compl. Ex. B at 43; Motion to Dismiss Ex. B).  He further notified Plaintiff that, pursuant to the CBA, he was providing notice of the "intent to terminate [Plaintiff's] employment with Florida Gulf Coast University for misconduct (violation of the University's Consensual Relationship Policy) effective at the close of business on Friday, December 7, 2018." (Motion to Dismiss Ex. B).  Defendant Llorens informed Plaintiff of his right within ten calendar days "to provide a written response outlining reasons [he] believe[s] the intended action should not be taken."  (Id.).

On November 30, 2018, Plaintiff provided Defendant Llorens with a four-page written response.  (SAC ¶ 44; Compl. Ex. H).  In the letter, Plaintiff again admitted to violating the Consensual Relationship Policy and requested that the University impose lesser discipline for this violation.  (Compl. Ex. H at 1).  Plaintiff also provided "contextual evidence" that he believed needed to be considered to convince the University to impose lesser discipline.  (Id.).

### D.   After Providing Plaintiff with Opportunities to Be Heard, Llorens Notifies Plaintiff of Termination

After reviewing Plaintiff's four-page written response, on December 5, 2018, Defendant Llorens sent Plaintiff a letter notifying him of the intent to terminate his employment for misconduct as of December 7, 2018.  (SAC ¶ 46; Motion to Dismiss Ex. C).[6]  Defendant Llorens noted that Plaintiff previously was provided with notice of the University's intent to terminate his employment and that Plaintiff had an opportunity to respond, which he did when he provided the written response on November 30, 2018.  (Motion to Dismiss Ex. C).  Defendant Llorens indicated that he reviewed Plaintiff's response, but found that it "provided no compelling reason why the

---

[6] As Exhibit I to the Complaint is difficult to read, Defendant has attached a true and correct copy of this document as Exhibit C to this Motion.

intended action should not be taken." (Id.).  As a result, Defendant Llorens expressly stated: "[Y]ou are hereby notified that you will be separated from the University through termination on December 7, 2018, and are not eligible for rehire." (Id.).  He also expressly informed Plaintiff that "this action by the University is subject to Article 20, Grievance Procedure and Arbitration." (Id.).

### E.    After His Termination, Plaintiff Has Another Opportunity to Be Heard Through a Grievance and Subsequent Grievance Meetings

On December 18, 2018, after his termination, Plaintiff filed a Step 2 grievance, alleging that the Board violated Article 16, Sections 2, 3, and 6 of the CBA.  (SAC ¶ 53; Compl. Ex. J). Specifically, he asserted that the University failed to impose progressive discipline, the University did not have just cause, and he should have been given 6 months' notice before his termination. (Id.).  The CBA provides that "[t]he filing of a grievance constitutes a waiver of any applicable rights to review of University action pursuant to the Administrative Procedures Act, Chapter 120, Florida Statutes, or to the review of such action under university regulations, policies, procedures which may otherwise be available to address such matters." (Compl. Ex. B).  Thus, by filing the grievance, Plaintiff voluntarily waived his right to be heard through certiorari or other state procedures.  Nonetheless, through the grievance procedure itself, Plaintiff was afforded numerous additional opportunities to be heard.

On January 4, 2019, the grievance was assigned to a university representative, Tanya Benford.  (Compl. Ex. J at 2).  Benford met with Plaintiff on January 10, 2019, to discuss his grievance, and again on January 25, 2019, to obtain additional clarification on points discussed in the prior meeting.  (Id.).  At the Step 2 meetings, the grievant has the right to present any evidence in support of the grievance.  (Compl. Ex. B at 71).  The grievant also has "the right, upon written request, to a copy of any identifiable documents relevant to the Step 2 grievance and not previously provided or not available on the University's website or share drive." (Id.).  Plaintiff did not make

7

any written request for any documents nor does he allege that he did so.  However, it cannot be disputed that he had the opportunity to do so.

On February 19, 2019, Benford denied the grievance and sent Plaintiff a written decision summarizing and explaining the reasons for her decision.  (Compl. Ex. K at 1).  Benford provided a detailed report "summariz[ing] [her] findings, decisions, and underlying reasoning regarding each of the alleged violations."  (Id.).  This decision included a list of the documents referred to in the decision as well as any additional documents presented by either party during the review of the grievance. (Id.).

F.    **Plaintiff Had the Opportunity to be Heard Through Arbitration, But He Failed to Comply with the Administrative Exhaustion Requirements in the CBA**

According to Article 20.6(F)(1) of the CBA, "[i]f the grievance has not been satisfactorily resolved at Step 2, [the Union] may, upon the request of the grievant, proceed to Step 3 Request for Arbitration within the time limitations outlined in this Agreement."  (Compl. Ex. B at 72 (emphasis added)).  "All Step 3 Requests for Arbitration must be filed with the Office of Academic Affairs within thirty (30) days of the receipt of the Step 2 decision . . . by the grievant **and** [the Union]."  (Id. (emphasis added)).  Additionally, the CBA requires that all demands for arbitration be signed by "the grievant and sent by [the Union] to the Office of Academic Affairs and the UFF-FGCU State President or State Director of Arbitration."  (Id.).  "As the certified bargaining agent UFF-FGCU State Office shall decide whether to proceed to arbitration."  (Id.).  As the CBA provides, a notice of intent to arbitrate from the Union's state office is required to proceed to arbitration. (Id.). Finally, as the CBA expressly provides, "[a] grievance which has been filed at Step 3 and on which no action has been taken by the grievant or UFF-FGCU State Office for sixty (60) days shall be deemed withdrawn and resolved in accordance with the decision issued at the prior Step."  (Id. at 75).  Likewise, it also cautions that "[u]pon the failure of the grievant or the

8

UFF-FGCU, where appropriate, to file an appeal within the time limits provided in this Article, the grievance shall be deemed to have been resolved by the decision at the prior step." (Id. at 70).

Plaintiff alleges that on March 20, 2019, he submitted a request for arbitration pursuant to the CBA. (SAC ¶ 56; Compl. Ex. L). However, as outlined in the CBA, in order to proceed to arbitration, the Union was required to submit a request for arbitration by March 21, 2019 (thirty days after receipt of the Step 2 decision) to the Office of Academic Affairs. As evidenced by Exhibit L to Plaintiff's Complaint, Plaintiff failed to follow the procedures for requesting arbitration. (See Compl. Ex. L). Plaintiff does not allege and the exhibits to the Complaint do not support that the Union requested to proceed to arbitration on Plaintiff's grievance within the time period provided in the CBA. Indeed, the demand for arbitration, which was attached as Exhibit L to the Complaint, is not signed by the Union. (See id.). Pursuant to the CBA, which was ratified by the bargaining unit, only the certified bargaining agent, UFF-FGCU State Office, shall determine whether to proceed to arbitration.[7] Plaintiff does not allege that FGCU received notice of intent to proceed to arbitration from the UFF-FGCU State Office, the certified bargaining agent. Consequently, Plaintiff's request for arbitration was time-barred and, pursuant to the express terms of the CBA, the grievance was resolved at Step 2. (See Compl. Ex. B).

## III. Legal Argument

### A. Rule 12(b)(1) Standard

Rule 12(b)(1) motions to dismiss assert a lack of subject matter jurisdiction. Eleventh Amendment immunity analysis is appropriately conducted under 12(b)(1) where it does not implicate the merits. See Thomas v. U.S. Postal Service, 364 F. App'x 600, 601 (11th Cir. 2010)

---

[7] Parfitt, of course, had the opportunity to challenge the decision by filing an unfair labor practice charge with PERC against the Union if he believed that this decision was a violation of the Union's duty of fair representation. Parfitt elected not to do so.

("[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists."); Ostroff v. State of Fla., Dep't of Health & Rehab. Servs., 554 F. Supp. 347, 355 n.13 (M.D. Fla. 1983) (electing to analyze the state agency defendant's Eleventh Amendment defense under Rule 12(b)(1)).

### B.    Rule 12(b)(6) Standard

Rule 12(b)(6) allows a party to raise a defense based on "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss, a pleading "must plausibly allege all the elements of the claim for relief."  Feldman v. Am. Dawn, Inc., 849 F.3d 1333, 1339 (11th Cir. 2017) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs."  Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).

That maxim, however, does not apply to "labels and legal conclusions."  Id.  Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient.  Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Mere naked assertions are insufficient.  Id.  Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face."  Id. (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

### C.   Plaintiff's State Law Claim to Compel Arbitration (Count III) Must Be Dismissed For Lack of Subject Matter Jurisdiction

In Count III, Plaintiff brings a claim under state law against Defendant Llorens in his official capacity.[8]  (SAC ¶ 6).  Specifically, Count III is a petition to compel arbitration under Florida Statutes § 682.03, asking this Court to compel Defendant Llorens to "direct and authorize FGCU's participation in arbitration" of Plaintiff's breach of the CBA claim.[9]  (See SAC ¶¶ 6, 15–16).  However, this claim is barred by the Eleventh Amendment.

"Suits against a state officer in his or her official capacity are considered to be suits against the state."  Thorne v. Chairperson Fla. Parole Comm'n, 427 F. App'x 765, 769–70 (11th Cir. 2011); see also Carr v. City of Florence, Ala., 916 F.2d 1521, 1524 (11th Cir. 1990).  Even when only prospective relief is sought, the Eleventh Amendment bars state law claims against a state in federal court.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 104–106 (1984); see also Thorne, 427 F. App'x at 769–70.

It does not matter whether that claim is brought against a state official in his or her official capacity or against the state itself.  The result is the same – the claim is barred by the Eleventh

---

[8] In the SAC, Plaintiff asserts that the request to compel arbitration is "in compliance with the Federal Constitution, the CBA, and applicable Florida law."  (SAC ¶ 6).  It is unclear as to what Plaintiff is attempting to invoke with this language.  There is no federal constitutional right to arbitration.  See Jolibois v. Fla. Int'l Univ. Bd. of Trustees, 654 F. App'x 461, 466 (11th Cir. 2016) ("Jolibois's suspension and termination did not violate his procedural due process rights, because a violation of CBA procedures does not necessarily equate to a due process violation under the federal constitution.").  Nonetheless, Count III is only pled under state law.  Indeed, the title of Count III is "Petition to Compel Arbitration pursuant to FL. Stat. § 682.03."  (SAC at 16).

[9] Defendant Llorens is not party to the CBA.  (Compl. Ex. B).  The CBA is solely and exclusively between the Board and the Union.  (Id.).  As a result, Plaintiff cannot bring a claim under § 682.03. See Hosp. Ventures of Coral Springs, L.C. v. Am. Arbitration Ass'n Inc., 755 So. 2d 159, 160 (Fla. 4th Dist. Ct. App. 2000) ("The only proper parties to a lawsuit under section 682.03 to determine the propriety of arbitration are the parties to the arbitration agreement . . . .").  Additionally, while Plaintiff asks this Court to compel Defendant Llorens to "direct and authorize FGCU's participation in arbitration," Plaintiff does not establish that Defendant Llorens has any authority to direct the Board to take action.  Thus, even if this claim were not absolutely barred by the Eleventh Amendment, it also would fail to state a claim upon which relief could be granted.

Amendment.  See Thorne, 427 F. App'x at 769-70 (concluding that the plaintiff's state law claims against state officials in federal court for prospective relief were barred by the Eleventh Amendment); see also Morris v. Wallace Cmty. Coll.-Selma, 125 F. Supp. 2d 1315, 1344 (S.D. Ala. 2001) ("While the Eleventh Amendment allows a federal suit against a state official in his official capacity for certain forms of prospective equitable relief to rectify violations of federal law, no similar exception exists when the state official is sued in federal court for violations of state law."), aff'd sub nom. Morris v. Wallace Cmty., 34 F. App'x 388 (11th Cir. 2002).  As a result, Defendant Llorens's "immunity pursuant to the Eleventh Amendment is absolute."  Morris, 125 F. Supp. 2d at 1344.  Therefore, this Court lacks jurisdiction over this claim and it must be dismissed.

> **D.     Plaintiff Fails to State a Claim for a Violation of Procedural Due Process**
>
> **1.     Plaintiff Fails to Plausibly Allege a Deprivation of Constitutional Rights**

Counts I and II of the Second Amended Complaint allege that Defendant Llorens violated Plaintiff's right to procedural due process under the Fifth and Fourteenth Amendments.   (SAC ¶¶ 60–75).  College professors terminated mid-contract have interests in their continued employment that are safeguarded by constitutional due process.  See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 576–77 (1972).  However, in order to establish a violation of procedural due process under the Fourteenth Amendment, the Plaintiff must establish (1) "'a deprivation of a constitutionally-protected liberty or property interest'" and (2) "a 'constitutionally inadequate process.'"  Foxy Lady, Inc. v. City of Atlanta, Ga., 347 F.3d 1232, 1236 (11th Cir. 2003); see also Craig v. Selma City School Bd., 801 F. Supp. 585, 589-90 (S.D. Ala. 1992).  The "essential requirements of due process" are notice and a pre-termination opportunity to respond.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985) (explaining that a "tenured

employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before a state or state agency may terminate the employee). "Requiring any more prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Id.; see also Harrison v. Wille, 132 F.3d 679, 684 (11th Cir. 1998) ("[A] full evidentiary hearing is not required.").

Further, "the law is well established that the mere failure to follow state procedures does not necessarily rise to the level of a violation of federal procedural due process rights." Maddox v. Stephens, 727 F.3d 1109, 1124 n.15 (11th Cir. 2013); Harris v. Birmingham Bd. of Educ., 817 F.2d 1525, 1528 (11th Cir. 1987) ("[W]e emphasize that the violation of a state statute outlining procedure does not necessarily equate to a due process violation under the federal constitution. If otherwise, federal courts would have the task of insuring strict compliance with state procedural regulations and statutes."); Jolibois, 654 F. App'x at 466 ("Jolibois's suspension and termination did not violate his procedural due process rights, because a violation of CBA procedures does not necessarily equate to a due process violation under the federal constitution." (citation and internal quotation marks omitted)).

Here, as explained above, Defendant Llorens satisfied the essential requirements of constitutional due process by providing Plaintiff with notice of the allegations against him, an explanation of FGCU's evidence, and a pre-termination opportunity to respond. Plaintiff undisputedly was provided notice of the allegations against him. On November 1, 2018, Plaintiff was informed that FGCU had received a complaint of sexual harassment against him. (SAC ¶ 31; Motion to Dismiss Ex. A). On November 6, 2018, Gunter interviewed Plaintiff regarding his alleged misconduct. (SAC ¶¶ 37–38). Plaintiff admitted to engaging in the sexual relationship

with the Complainant while in a supervisory capacity and violating the Consensual Relationship Policy.  (Compl. Ex. F at 2).  On November 21, 2018, Gunter sent Plaintiff the investigative report, which provided additional notice by summarizing the allegations of misconduct levied against Plaintiff and providing the investigation's findings as well as an explanation of the evidence supporting those findings.  (SAC ¶ 40; Compl. Ex. F).  On November 27, 2018, Plaintiff was provided with notice that FGCU intended to terminate his employment based on the findings from the investigation.  (Motion to Dismiss Ex. B).   In this notice, Llorens identified the contemplated disciplinary action (termination), the reason for that action, and an explanation of why the University was contemplating this action.  (Id.).   After providing Plaintiff with an opportunity to respond, Llorens provided notice to Plaintiff that he had reviewed Plaintiff's explanation, did not find it persuasive, and was going to terminate his employment on December 7, 2018.  (Motion to Dismiss Ex. C).  It also provided notice to Plaintiff that the grievance and arbitration process in the CBA applied to this decision.  (Id.).

In addition to the notice provided to Plaintiff, Plaintiff also was given numerous opportunities to be heard in response to this notice.  Plaintiff had an opportunity to respond during the interview with Gunter on November 6, 2018, after Plaintiff received notice of the complaint being investigated.  (Compl. Ex. F).  Likewise, after receiving written notice of the findings, evidence to support the findings, and an explanation of reason for the findings as well as written notice of the intent to terminate Plaintiff based on the findings of the investigation, Plaintiff had another opportunity to respond.  As a result, on November 30, 2018, Plaintiff provided a four-page written response outlining reasons he believed the intended action should not be taken.  (SAC ¶ 44; Compl. Ex. H).  This letter was considered before the termination decision was made.  (SAC ¶ 50; Motion to Dismiss Ex. C).

Most of Plaintiff's complaints are his disagreement with the result of the process given him.  These allegations are insufficient to state a claim.  As the Eleventh Circuit has recognized, "quarrel[ing] with the result of a proceeding does not state a claim that due process was not afforded[;] . . . procedural due process does not guarantee a particular result."  Schiavo ex. rel. Schindler v. Schiavo, 403 F.3d 1289, 1295 (11th Cir. 2005) (per curiam).  Likewise, Plaintiff's complaint also is premised on the alleged violations of the CBA, which is insufficient to state a claim for a constitutional deprivation.[10]  Jolibois, 654 F. App'x at 466.  Additionally, Plaintiff's complaint that Llorens was a "non-objective decision maker" also is insufficient to state a claim for two reasons.  (SAC ¶ 74).  First, Plaintiff has failed to plead any facts to support the conclusion that Llorens was not objective.  Second, as the Eleventh Circuit found in McKinney v. Pate, bias of the decision maker does not amount to a procedural process violation unless there is no mechanism to challenge the bias.  See 20 F.3d 1550, 1562-63 (11th Cir.  1994).  As set forth below, Plaintiff had numerous mechanisms available to him to challenge any alleged bias of Llorens and Plaintiff failed to take advantage of these opportunities.

_____

[10] Plaintiff cannot use a constitutional due process claim to allege a breach of the CBA.  This Court has no jurisdiction over such a claim.  See Miami Ass'n of Firefighters Local 587 v. City of Miami, 87 So. 3d 93, 95 (Fla. Dist. Ct. App. 3d 2012) ("The issue presented on appeal is whether a violation of the requirements and procedures under the Collective Bargaining Agreement and those provided in Florida statutes creates an issue within the jurisdiction of the circuit court prior to being heard by PERC. We agree with the trial court that it does not."); Sickon v. School Board of Alachua County, Fla., 719 So. 2d 360, 364 (Fla. Dist. Ct. App. 1st 1998) ("Redress for violations of rights arising under the collective bargaining agreement must be pursued in the manner contemplated by the collective bargaining agreement").  Indeed, "[e]ven where allegations of unfair labor practices. . . present issues of denial of due process of law, PERC has exclusive jurisdiction, and such a complaint is subject to dismissal."  City of Miami, 87 So. 3d at 96.  Thus, the alleged breach of a CBA does not establish a violation of constitutional due process.  In order to state such a claim, Plaintiff must establish a constitutionally, not contractually, inadequate process.  Plaintiff cannot meet this burden in this case.

Finally, Plaintiff alleges that Llorens and FGCU denied him access to unspecified documents, which he contends is a violation of constitutional due process.  (See SAC ¶¶ 20, 52, 74).  Plaintiff does not provide any details about the content of these documents, how Llorens is responsible for the denial,[11] or how the unspecified documents were relevant given that he admitted to violating the Consensual Relationship Policy.  (Complaint Ex. F at 2; Ex. H).  Indeed, it appears, based on Plaintiff's allegation, that FGCU did not refuse to provide documents—Parfitt declined to pay for them.  (See SAC ¶ 52).  Plaintiff does not allege how Defendant Llorens had any role in this process.  (Id.).  Notably, Plaintiff stated in his letter in response to the notice of intent to terminate that he "provided relevant documentation" to Gunter during the investigation. (Complaint Ex. H).[12]

Regardless, as a matter of constitutional law, no formal pre-hearing discovery must be provided to satisfy procedural due process.  See Nash v. Auburn Univ., 812 F.2d 655, 664 (11th Cir. 1987) ("Due process requires that appellants have the right to respond, but their rights in the academic disciplinary process are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial."); see also Ashton v. Whitman, 94 F. App'x 896, 900–01 (3d Cir. 2004) (recognizing the limited purpose of pre-termination proceedings and that due process does not require an employer to provide every piece of evidence relevant to an employee's

---

[11] Indeed, Plaintiff does not even allege that he directed his purported request for documents to Defendant Llorens or that Defendant Llorens had knowledge of this request.  (SAC ¶ 52).

[12] Plaintiff did not complain of lack of access to documents in his letter in response to the notice of intent to terminate (see Complaint Ex. H) or his Step 2 grievance (see Complaint Ex. J).  Further, Plaintiff does not allege that he took advantage of the document production procedures outlined in the CBA, which allowed him to make written requests for relevant documents.  (See Complaint Ex. B at 71).  To the extent that Plaintiff alleges that the unspecified documents were part of a public records request under Chapter 119 (see SAC ¶ 52), the statute specifically provides a state law remedy for alleged violations.  See Fla. Stat. § 119.11.  Thus, there were adequate remedies for any alleged defect in process based on the lack of document production.

termination); Kelly v. U.S. EPA, 203 F.3d 519, 523 (7th Cir. 2000) (stating that "there is no constitutional right to pretrial discovery in administrative proceedings"); Derstein v. Kansas, 915 F.2d 1410, 1413 (10th Cir. 1990) (concluding the pre-termination meeting and ten days to respond afforded procedural due process despite the fact that employee did not know of all relevant facts and was not given copy of the sexual harassment investigation transcript at the meeting), abrogated on other grounds by Fed. Lands Legal Consortium ex rel. Robart Estate v. United States, 195 F.3d 1190, 1195 (10th Cir. 1999); N. L. R. B. v. Interboro Contractors, Inc., 432 F.2d 854, 857–58 (2d Cir. 1970) (citing Miner v. Atlass, 363 U.S. 641 (1960)) ("It is well settled that parties to judicial or quasi-judicial proceedings are not entitled to pre-trial discovery as a matter of constitutional right."). Plaintiff seeks even more process than is afforded to federal criminal defendants. Weatherford v. Bursey, 429 U.S. 545, 559 (1977) (concluding that there is no general constitutional right to discovery in a criminal case).

The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Defendant Llorens satisfied the essential requirements of due process by providing Plaintiff with notice of the allegations against him, an explanation of FGCU's evidence, and a pre-termination opportunity to respond. Plaintiff also was given numerous opportunities to be heard post-termination. The University was not required to provide anything more. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985) (stating that requiring any more than notice and an opportunity to respond "would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee").

The Second Amended Complaint establishes that Plaintiff received notice and an opportunity to be heard, which is all that is required under the Constitution. See Jolibois, 654 F.

App'x at 466.  Thus, there are no facts pled in the Second Amended Complaint that plausibly suggest a deprivation of Plaintiff's procedural due process rights.

### 2.    Plaintiff Failed to Take Advantage of Additional State Remedies

Even assuming the pre-termination procedures were somehow deficient, Plaintiff's claim still fails because Plaintiff failed to take advantage of additional state remedies, which were available to cure any alleged defects.  See Foxy Lady, Inc., 347 F.3d at 1238; Reams v. Irvin, 561 F.3d 1258, 1266 (11th Cir. 2009) ("It is well-settled that a constitutional violation is actionable under § 1983 'only when the state refuses to provide a process sufficient to remedy the procedural deprivation.'"); McKinney, 20 F.3d at 1557, 1563 (finding that courts "look to whether the available state procedures were adequate to correct the alleged procedural deficiencies").  This rule is based on the principle that "'the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora – agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation.'"  Reams, 561 F.3d at 1266; see also Horton v. Bd. of County Comm'rs of Flagler County, 202 F.3d 1297, 1300 (11th Cir. 2000).  "[T]he state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due."  Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000).

"If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process."  McKinney, 20 F.3d at 1565.  Indeed, the Eleventh Circuit explained this principle as follows:

> The McKinney rule is not micro in its focus, but macro.  It does not look to the actual involvement of state courts or whether they were asked to provide a remedy in the specific case now before the federal court.  Instead, the McKinney rule looks to the existence of an opportunity – to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court

18

> plaintiff claims to have suffered.  If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so.

Horton, 202 F.3d at 1300; see also Foxy Lady, Inc., 347 F.3d at 1239.  The Fourteenth Amendment merely requires the opportunity for procedural due process, not that the plaintiff actually take advantage of it.  See Horton, 202 F.3d at 1300. Therefore, if there were procedural deficiencies in the pre-termination process, those defects are not actionable if there were adequate and available state law remedies, even if Plaintiff failed to take advantage of them.

In this case, Plaintiff has not pled in the Second Amended Complaint that state law remedies were inadequate. (SAC ¶¶ 60-75).  Instead, the Second Amended Complaint and its exhibits establish that these remedies were adequate.  After his termination, Plaintiff elected to file a grievance under the CBA.  Pursuant to the CBA, the filing of a grievance waives the employee's right to seek judicial review of the University's decision under the Administrative Procedures Act or pursuant to other University regulations, policies, or procedures. (Compl. Ex. B at 69).  Thus, while Plaintiff could have sought judicial review in state court, see, e.g., Spiegel v. Univ. of S. Fla., 555 So. 2d 428, 428 (Fla. Dist. Ct. App. 2d 1989); Couchman v. Univ. of Cent. Fla., 84 So. 3d 445, 446–47 (Fla. Dist. Ct. App. 5th 2012) (concluding that the plaintiff could seek certiorari review, including a due process claim, as of right of a state university's decision in state court), Parfitt voluntarily waived this state remedy when he elected to file a grievance under the CBA. (Compl. Ex. B at 69).  As such, there was an adequate state remedy for the alleged procedural due process violation, but Plaintiff elected not to take advantage of it.  See Reams, 561 F.3d at 1267; Foxy Lady, Inc., 347 F.3d at 1239.  As in McKinney, if Parfitt had not elected to waive his state law remedies, "that forum might well have prevented [the alleged] violation of [the plaintiff's]

procedural due process rights and thereby obviated the need for this suit." McKinney, 20 F.3d at 1561.

Moreover, the grievance process itself provided Plaintiff with adequate remedies for any alleged procedural violation. Farhat v. Jopke, 370 F.3d 580, 596 (6th Cir. 2004) ("The law is also clear that grievance procedures provided by a collective bargaining agreement can satisfy a plaintiff's entitlement to post-deprivation due process."). After Plaintiff filed the grievance, he was given multiple additional opportunities to be heard through the written grievance as well as by attending two grievance meetings. (Compl. Ex. J at 2; Ex. B at 71). While the grievance was denied, that denial did not end the process available to Plaintiff. According to Article 20.6(F) of the CBA, Plaintiff could have proceeded to arbitration if the Union had timely requested it. (Compl. Ex. B at 72).

While the parties disagree as to whether Plaintiff made a proper and timely demand for arbitration,[13] Plaintiff does not deny that this remedy, an arbitration, was available to him. (SAC ¶ 46; Compl. Ex. I). Plaintiff admits that Defendant Llorens informed him that this remedy was available to him on December 5, 2018. (Id.). Had Plaintiff properly requested arbitration, Plaintiff would have received a full hearing before an impartial arbitrator. (Compl. Ex. B at 72-73).

---

[13] Plaintiff contends that Defendant Llorens committed a constitutional deprivation of procedural due process by ignoring and failing "to follow through with PARFITT's timely request for arbitration." (SAC at 15). There is no constitutional right to arbitration. In fact, as set forth above, this is a claim that lies with the sole jurisdiction of PERC. (See supra note 10). Furthermore, Plaintiff does not allege that he provided Defendant Llorens with the Request for Arbitration. (SAC ¶ 56). Indeed, the Request for Arbitration form, attached as Exhibit L to the Complaint, belies any assertion it was received by the FGCU Office of Academic Affairs. (Compl. Ex. L). It likewise does not reflect that it was even received by the Union as required by the CBA. While the document provides for the signature of the name of the individual who received the request in the Office of Academic Affairs, this document is not signed. (Id.). As a result, Plaintiff fails to plead any facts to support the conclusion that Defendant Llorens ignored and failed to follow through on the request for arbitration.

Plaintiff also would have had a limited right of judicial review pursuant to Florida Statutes § 682.13. (Id.).  As recognized in McKinney, the Court does not look to whether an arbitration occurred, but whether there was the existence of an opportunity.  20 F.3d at 1565; see also Horton, 202 F.3d at 1300.  It is not disputed that the opportunity existed and it was an adequate remedy.  According to Plaintiff, the opportunity and adequate remedy still exist, which also is fatal to his due process claims.  See id.

As a result, Plaintiff failed to show that the state remedies available to him were inadequate to remedy any alleged procedural deprivations and Plaintiff cannot state a claim for a procedural due process violation.  As a result, Counts I and II must be dismissed.

### 3.    Defendant Llorens Is Entitled to Qualified Immunity

The doctrine of qualified immunity provides "complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002) (quotation marks and citation omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation" Id. at 1194. "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to determine the validity of a qualified immunity defense as early in the lawsuit as possible." Id. (quotation marks and citation omitted).  Because there is no way to un-sue a state official, and the protections secured by immunity are lost if a suit is allowed to continue, courts have established "a heightened pleading requirement when a plaintiff brings a § 1983 complaint against officials acting in their individual capacities."  Washington v. Bauer, 149 F. App'x 867, 870 (11th Cir. 2005) (quoting Laurie v. Alabama Court of Criminal Appeals, 256 F.3d 1266, 1275-76 (11th Cir. 2001)).

In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Id. at 1194 (quotation marks and citations omitted).  In analyzing whether the official was acting within her discretionary authority, courts assess "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).

Once the defendant establishes that he or she was acting within his or her discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity.  Lee, 284 F.3d at 1194. To defeat the defense of qualified immunity, the plaintiff must establish that: (1) the facts alleged show the defendant's conduct violated a constitutional right, and (2) at the time of violation, the constitutional right was clearly established.  Id. (citing Saucier v. Katz, 533 U.S. 194 (2001)).

Here, Plaintiff alleges that Defendant Llorens was acting within his discretionary authority, (SAC ¶¶ 17, 25), and thus, the burden shifts to Plaintiff to show that Defendant is not entitled to qualified immunity.  Plaintiff has not and cannot meet this burden.  First, as discussed above, Plaintiff has failed to establish any violation of procedural due process.  He has not plausibly alleged that he was deprived of the appropriate notice and opportunity to be heard as required under procedural due process, nor are there inadequate state remedies to address any such deprivation as required to establish a violation of a constitutional right.  Where, as here, there is no violation of a constitutional right, qualified immunity should be granted and there is no need to consider whether the constitutional right in question was clearly established.  Hope v. Pelzer, 536 U.S. 730, 793 (2002).

Should the inquiry proceed to the second step of the qualified immunity analysis, Plaintiff cannot demonstrate that the rights violated were clearly established at the time the decisions were made.  A clearly established right is one where "a reasonable official would understand that what he is doing violates that right." Id. at 739.  In addition, in order to find a violation of clearly established law, the court may only look to decisions of the United States Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida. See Carruth v. Bentley, 942 F.3d 1047, 1054 (11th Cir. 2019).  There are no such decisions establishing that, under the facts pled in this case, Defendant Llorens violated clearly established law.

There is no decision of the Supreme Court of Florida, Eleventh Circuit, or United States Supreme Court that would establish that Defendant violated any clearly established right by the facts of this case.  Specifically, in summary,[14] the Second Amended Complaint and its exhibits demonstrate the following facts:

- 11/1/2018 – Plaintiff was provided with notice of the sexual harassment complaint made against him by an FGCU student.

- 11/6/2018 – Plaintiff was given an opportunity to be heard regarding the complaint.

- 11/21/2018 – Plaintiff was provided notice of the findings of the investigation, the evidence reviewed, and reason for those findings.

- 11/27/2018 – Plaintiff was provided with notice of the intent to terminate his employment, an opportunity to be heard prior to that decision being made, the reason the University was contemplating his termination, and an explanation of why the University was contemplating his termination.

---

[14] Defendant has discussed in detail each of these events in this Motion.  For the purpose of this argument, they are presented here in summary form.

- 11/30/2018 – Plaintiff was provided with an opportunity to be heard prior to the decision to terminate his employment.

- 12/5/2018 – After reviewing Plaintiff's response, Defendant Llorens provided notice of the decision to terminate Plaintiff's employment, the reason for the decision, and an explanation of why the University reached this decision. It also explained that this decision was subject to the grievance and arbitration provision of the CBA.

- 12/7/2018 – Plaintiff's employment was terminated.

- 12/18/2018 – Plaintiff filed a grievance challenging his termination under the CBA. In doing so, by the express language of the CBA, Plaintiff elected not to take advantage of the other state remedies available to him.

- 1/10/2019 – Plaintiff had an opportunity to be heard at a grievance meeting. During the grievance process, Plaintiff had the right to present any evidence in support of the grievance and, upon written request, to seek copies of any documents relevant to the grievance.

- 1/25/2019 – Plaintiff had another opportunity to be heard through a grievance meeting.

- 2/19/2019 – Plaintiff received notice of the denial of the grievance, including an explanation of the reason why each violation was unfounded and identification of the evidence used to reach that determination. Plaintiff had an opportunity to have the grievance heard in an arbitration hearing.

- 3/21/2019 – The deadline under the CBA for Plaintiff and the Union to file a request for arbitration.

Based on these facts, there is no decision of the Supreme Court of Florida, Eleventh Circuit, or United States Supreme Court that would have provided notice to Defendant Llorens that there is a violation of the due process clause under these circumstances. Because Plaintiff cannot

establish any violation of a clearly established constitutional right, Defendant Llorens is entitled to qualified immunity.  Thus, Counts I and II of Plaintiff's Second Amended Complaint must be dismissed with prejudice.

## IV.    Conclusion

WHEREFORE, Defendant, JAMES LLORENS, respectfully requests that the Court grant this Motion to Dismiss, dismiss the Second Amended Complaint with prejudice, and provide all other relief deemed appropriate and just.

Dated this 8th day of May, 2020.

Respectfully submitted,

*s/Sacha Dyson*
GREGORY A. HEARING
Florida Bar No.: 817790
gregory.hearing@gray-robinson.com
SACHA DYSON
Florida Bar No.:  509191
sacha.dyson@gray-robinson.com
KEVIN M. SULLIVAN
Florida Bar No.:  1003812
kevin.sullivan@gray-robinson.com
GRAYROBINSON, P.A.
401 E. Jackson Street, Suite 2700
P.O. Box 3324
Tampa, Florida 33602 (33601-3324)
TEL:  (813) 273-5000
FAX: (813) 273-0072
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of May, 2020 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Floyd Yarnell, Esq.
Don Peterson, Esq.
Yarnell & Peterson, P.A.

3431 Pine Ridge Road, Suite 101
Naples, FL 34109

Timothy Edwards, Esq.
Edwards Law Group, LLC
873 Peregrine Circle
Oregon, WI  53575
**ATTORNEYS FOR PLAINTIFF**


_s/**Sacha Dyson**_
Attorney