UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTOPHER PARFITT, individually

        Plaintiff,

v.                              Case No.:  2:19-cv-727-FtM-38NPM

JAMES LLORENS,

        Defendant.
_____/

## OPINION AND ORDER[1]

Before the Court is Defendant James Llorens' Motion to Dismiss (Doc. 68), Plaintiff

Christopher Parfitt's response in opposition (Doc. 69), and Llorens' reply (Doc. 72).  The

Court grants the Motion.

## BACKGROUND[2]

This is an employment termination dispute.  Parfitt was a professor at Florida Gulf

Coast University ("FGCU").  Before beginning his professor position—but while employed

by FGCU—Parfitt had an undisclosed sexual relationship with a graduate student (the

"Complainant").[3]  After the relationship ended, the Complainant filed a complaint against

Parfitt.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] These are the facts from the Second Amended Complaint (the "Complaint"), which is the operative pleading.  (Doc. 67).  The Court accepts all well-pled facts as true.  *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).  Many exhibits from the initial pleading are incorporated by reference in the Complaint.  (Doc. 67 at 3 n.1).  So the Court considers those exhibits—relying on them if they conflict with general or conclusory allegations.  *E.g.*, *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).

[3] Parfitt's exact position at the time is unclear.  The Complaint merely says he was "employed" (Doc. 67 at 3) and an exhibit says he was "in a staff position" (Doc. 1-8 at 2).

Llorens is an administrator at FGCU.  In early November 2018, Llorens met with Parfitt and informed him FGCU was investigating allegations of "sexual harassment." (Doc. 67 at 6).  Llorens refused to provide more detail and placed Parfitt on leave with pay pending an investigation.  A few days later, Parfitt sat down with FGCU's investigator (the "Investigator").  During that meeting, the Investigator failed to explain the evidence or identify witnesses.  Yet the Investigator accused Parfitt of a "policy violation."  (Doc. 67 at 8).  And at that meeting, Parfitt admitted to violating FCGU's Consensual Relationship Policy (the "Policy").  (Docs. 1-8 at 2 ("I admitted to violating [the Policy] during the investigation . . . . I did acknowledge violating [the Policy] during the investigation."); 67 at 9 ("PARFITT admitted his involvement in this very brief relationship and cooperated in the inquiry.")).

Two weeks later, the Investigator issued an investigative report (the "Report"). (Doc. 1-6).  In it, she concluded Parfitt violated the Policy and explained the reasons for that conclusion.  Where relevant, the Policy follows: "Any employee with supervisory responsibilities is prohibited from engaging in an undisclosed amorous, dating, intimate or sexual relationship with an employee, student, volunteer, or contractor whom he/she supervises."  (Doc. 1-4 at 3).  Violating the Policy is misconduct that "may result in disciplinary action up to and including separation from" FGCU.  (Doc. 1-4 at 3).  But if an employee—like Parfitt—is covered by FGCU's collective bargaining agreement ("CBA") with the faculty union (the "Union"), the CBA may set forth the pertinent disciplinary procedure.  (Doc. 1-4 at 3).

One week after the Report, Llorens sent Parfitt a notice of intent to fire him for violating the Policy ("Notice of Intent").  (Doc. 1-7).  Parfitt had ten days to respond in

writing, which he did in a reconsideration request (the "Reconsideration").  (Doc. 1-8).  In it, Parfitt explained the context of his relationship with the Complainant and other factors he believed mitigated the Policy violation.  Unconvinced, Llorens fired Parfitt.  (Doc. 1-9).

Afterward, Parfitt filed a grievance under the CBA, challenging his termination. (Doc. 1-10).  An FGCU representative (the "Representative") met with Parfitt twice to discuss his grievance.  Eventually, the Representative concluded no CBA violations occurred.  (Doc. 1-11).  Parfitt then demanded binding arbitration (the last step in the CBA's grievance process).  (Doc. 1-12).  The Union did not sign or send the arbitration demand.  So Llorens, who decided whether to arbitrate, refused to process the request.

Parfitt sued Llorens and other defendants.  The Court dismissed a previous pleading.  (Doc. 66).  Now, Parfitt brings three claims against Llorens only—two procedural due process claims and a state-law claim to compel arbitration.

## LEGAL STANDARD

"The Eleventh Amendment restricts the judicial power of under Article III." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72-73 (1996).  So asserting Eleventh Amendment immunity tests subject-matter jurisdiction.  *Seaborn v. State of Fla., Dep't of Corr.*, 143 F.3d 1405, 1407 (11th Cir. 1998).  Rule 12(b)(1) governs motions to dismiss for lack of subject matter.  *E.g.*, *Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235, 1238 (M.D. Fla. 2019).  These challenges take two forms—facial and factual.  *Id.* at 1239.  On facial attacks (like this one) "the Court takes the allegations in the complaint as true." *Id.*

Motions to dismiss for failure to state a claim follow the familiar 12(b)(6) standard. A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

Below, the Court discusses Parfitt's due process claims together before turning to his petition for arbitration.

## A.  Procedural Due Process

In Counts 1 and 2, Parfitt challenges his termination and its process on procedural due process grounds.

### 1.  Process

There are three elements for a § 1983 procedural due process claim: (1) "a deprivation of a constitutionally-protected liberty or property interest"; (2) "state action"; and (3) "a 'constitutionally inadequate process.'" *Foxy Lady, Inc. v. City of Atlanta, Ga.*, 347 F.3d 1232, 1236 (11th Cir. 2003) (quoting *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)).  A professor fired before the end of a contract has a property interest in her continued employment. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 676-77 (1972).  Parfitt's property interest and state action are both undisputed.  So the Court does not address those prongs. *Yarbrough v. Decatur Hous. Auth.*, 941 F.3d 1022, 1026-27 (11th Cir. 2019).  Instead, the question is whether the process was inadequate.

When a professor challenges her termination, "due process requires that the professor be given '(1) notice of the reasons for dismissal; (2) notice of the names of adverse witnesses and the nature of their testimony; (3) a meaningful opportunity to be

heard; and (4) the right to be heard by a tribunal which possesses some academic expertise and an apparent impartiality toward the charges leveled against the teacher.'" *Laskar v. Peterson*, 771 F.3d 1291, 1297 (11th Cir. 2014) (quoting *Holley v. Seminole Cty. Sch. Dist.*, 755 F.3d 1492, 1497 (11th Cir. 1985)).  At a minimum, an adequate process requires pretermination "notice and an opportunity to be respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  "While some pre-termination hearing is necessary, it need not be elaborate." *Laskar*, 771 F.3d at 1297.  An employee must simply have an "opportunity to present reasons, either in person or in writing, why [the] proposed action should not be taken." *Loudermill*, 470 U.S. at 546.

It is important to emphasize what a procedural due process claim is not.  This cause of action focuses on "the fundamental fairness of a particular procedure" rather than "the result obtained." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 321 (1985).  In other words, "procedural due process does not guarantee a particular result." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1295 (11th Cir. 2005).

Broadly, Parfitt claims Llorens failed to provide sufficient notice of the charges and evidence against him.  Also, Parfitt was deprived of a pretermination hearing before an impartial decisionmaker where he could call and question witnesses or a posttermination process to remedy the deprivation.  Parfitt says the early November meetings were without notice and he could not properly defend himself at them.  Moreover, Parfitt contends Llorens misled him with sexual harassment allegations.  The Court disagrees.  Despite any issue with the early November meetings, the later proceedings provided Parfitt with the process due under *Loudermill*.

After learning about a "policy violation," Parfitt received the Report.  That Report detailed the Investigator's conclusion that Parfitt violated the Policy and the evidence supporting it.  In clear terms, it explained Parfitt was in a supervisory role over the Complainant.  Specifically, the Report relied on Parfitt's position as the Complainant's professor and supervisor, along with him serving on her dissertation committee.  While in that capacity, Parfitt admitted to having a sexual relationship with the Complainant.  Thus, the Report continued, it made no difference if the Complainant had any fear of retaliation or Parfitt made any promises to her.  The relationship was a Policy violation by itself because FGCU considers supervisor-student relationships to present "an inherent conflict of interest." (Doc. 1-6 at 2-3).  Moreover, while the Report did not opine on an appropriate punishment, it warned twice that Policy violations "may result in disciplinary action up to and including separation from the University."  (Doc. 1-6 at 2-3).  While the Report mentioned two other students who accused Parfitt of misconduct, it concluded there was insufficient evidence to support those complaints.  What is more, the Report informed Parfitt of his "right to request reconsideration."  (Doc. 1-6 at 3).  It appears Parfitt never did so.

About a week later, Llorens sent Parfitt the Notice of Intent.  This document notified Parfitt of Llorens' "intent to terminate [his] employment with [FGCU] for misconduct (violation of the [Policy]) effective at the close of business on Friday, December 7, 2018." (Doc. 1-7 at 2).  The Notice of Intent thus informed Parfitt his job was at risk along with the reason.  Further, the Notice of Intent informed Parfitt of his right under the CBA "to provide a written response outlining reasons [he] believe[d] the intended action should not be taken" within ten days.  (Doc. 1-7 at 2).

A few days later, Parfitt took that opportunity.  In the Reconsideration, Parfitt again "admitted to violating [the Policy] during the investigation," but he argued Llorens should consider "the context and circumstances of the events."  (Doc. 1-8 at 2).  Over the next three pages, Parfitt explained all the reasons he believed a punishment less than termination was appropriate.  But after reviewing the Reconsideration, Llorens still fired Parfitt for violating the Policy.

In short, Parfitt received the process due: he had "written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  *Loudermill*, 470 U.S. at 546.  If the Court required more, it "would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee."  *Id.*  That interest is particularly pertinent on these facts.  *See Morrisey v. Brewer*, 408 U.S. 471, 481 (1972) ("It has been said so often by [the Supreme] Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands.").  Parfitt admitted to having a sexual relationship with a student while in some supervisory capacity over her.  Undoubtedly, FGCU has a significant interest in quickly responding and disciplining a faculty member in that event.[4]

Much of Parfitt's quarrel is with Llorens' ultimate termination decision—not the pretermination process.  For instance, Parfitt contends a lesser sanction was fitting given the context and CBA progressive discipline scheme.  Again, however, procedural due

---

[4] Parfitt now disputes whether he was in a supervisory position as defined by the CBA.  Yet the Policy (not the CBA) provides the relevant definition.  (Doc. 1-4 at 2).  By serving on the Complainant's dissertation committee, he acted in a supervisory capacity.  The Report explained this.  And Parfitt specifically admitted to this fact in the Reconsideration.  (Doc. 1-8 at 2 ("Based on a literal interpretation of the [P]olicy, I was in a position of authority over" the Complainant.)).

process simply guarantees a fair process.  *Schiavo*, 403 F.3d at 1295.  It is not the Court's place to weigh in on the wisdom of Parfitt's firing or how heavily Llorens should have weighed the mitigating factors Parfitt offered.  Rather, the focus of this claim is on the process Parfitt received.

Parfitt also claims entitlement to a full evidentiary hearing to conduct discovery, cross examine the Complainant, and present evidence before termination.  Not so. *Laskar*, 771 F.3d at 1297; *Harrison v. Willie*, 132 F.3d 679, 684 (11th Cir. 1998) ("Before termination, a full evidentiary hearing is not required."); *Loudermill*, 470 U.S. at 545 ("In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." (citation omitted)).  A pretermination hearing is simply "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."  *Pearson v. Ga. through Davis*, 806 F. App'x 940, 946 (11th Cir. 2020) (quoting *Loudermill*, 470 U.S. at 545-46).  To facilitate that check, a public employee must have "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  *Loudermill*, 470 U.S. at 546; *see also Laskar*, 771 F.3d at 1297 (citing *Loudermill* for the proposition "that opportunity to be heard may be in person or in writing").  Parfitt received just that before Llorens fired him.  Afterward, Parfitt had the chance for review of his termination through the CBA grievance process.  He did so, meeting with the Representative twice, explaining why his termination was factually and procedurally wrong.

What is more, many of Parfitt's allegations are for contractual violations of the CBA, not constitutional deprivations.  For instance, Count 1 alleges a due process violation

because Parfitt did not receive a six-month notice before termination.  Even if the CBA required that, it is well established failing to follow state procedures is not actionable as a federal procedural due process claim.  *E.g.*, *Maddox v. Stephens*, 727 F.3d 1109, 1124 n.15 (11th Cir. 2013) ("[T]he mere failure to follow state procedures does not necessarily rise to the level of a violation of federal procedural due process rights."); *First Assembly of God of Naples, Fla., Inc. v. Collier Cty., Fla.*, 20 F.3d 419, 422 (11th Cir. 1994). Recently, the Eleventh Circuit extended that principle to violations of a Florida university professor's CBA claim.  *Jolibois v. Fla. Int'l Univ. Bd. of Trs.*, 654 F. App'x 461, 466 (11th Cir. 2016) (The "violation of CBA procedures 'does not necessarily equate to a due process violation under the federal constitution.'" (quoting *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1528 (11th Cir. 1987))) *see also* *Longmire v. City of Mobile, Ala.*, No. 16-0025-WS-M, 2017 WL 1352226, at *8 & n.14 (S.D. Ala. Apr. 10, 2017) (collecting cases).  Whether the CBA required six-month notice does not control the question of what the due process clause demands.  In the Notice of Intent, Llorens notified Parfitt the termination would be effective after the period for Parfitt to respond.  Parfitt thus had sufficient notice of his termination date before his opportunity to respond, which is enough to satisfy the "essential requirements of due process."  *See Loudermill*, 470 U.S. at 546; *Jolibois*, 654 F. App'x at 466.  And Parfitt points to nothing suggesting the alleged CBA violations were constitutional, as opposed to contractual, in character.[5]

Finally, below, the Court resolves Parfitt's allegations on Llorens' bias and presiding over "a sham termination process."  (Doc. 67 at 15-16); *see McKinney v. Pate,*

---

[5] Moreover, while unaddressed by the parties, it is unclear whether the CBA attached to the Complaint was even in effect during the relevant time.  The CBA says it remained "in effect until midnight August 7, 2018." (Doc. 1-2 at 98).  Yet the investigation and termination occurred a few months later.

20 F.3d 1550, 1563 (11th Cir. 1994) (en banc) ("[E]ven if [plaintiff] suffered a procedural *deprivation* at the hands of a biased [decisionmaker] at his termination hearing, he has not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation.").

For those reasons, the Court concludes Parfitt received a constitutionally adequate process.

### 2. State Remedies

Even if there were an actionable deprivation, Parfitt's claim is barred because he could have sought state-court review or arbitration.  *See McKinney*, 20 F.3d at 1557, 1563.  "It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000). That principle "recognizes that the state must have the opportunity to 'remedy the procedural failings of its subdivisions and agencies in the appropriate fora—agencies, review boards, and state courts' before being subjected to a claim alleging a procedural due process violation." *Id.* (quoting *McKinney*, 20 F.3d at 1560).  "The question is thus whether the state provided [plaintiff] with the means to present her allegations, demonstrate that the [deprivation] was wrongful, and receive redress" for it.  *Reams v. Irvin*, 561 F.3d 1258, 1266 (11th Cir. 2009).

"If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." *Cotton*, 216 F.3d at 1331.  Any "actual involvement of the state courts or whether they were asked to provide a remedy in the specific case" is irrelevant.

*Horton v. Bd. of Cty. Comm'rs of Flagler Cty.*, 202 F.3d 1297, 1300 (11th Cir. 2000). "Instead, the *McKinney* rule looks to the existence of an opportunity—to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation." *Id.* "If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy." *Id.*

Here, Parfitt had two avenues to remedy any procedural due process violation.

To start, Parfitt could have sought review of his termination and its process in Florida state court through certiorari or the Florida Administrative Procedure Act. *See, e.g.*, *Wang v. Fla. Atl. Univ. Bd. of Trs.*, No. 16-80915-CIV-MARRA, 2017 WL 1155889, at *5-6 (S.D. Fla. Mar. 27, 2017); *Spiegel v. Univ. of S. Fla.*, 555 So. 2d 428, 428-29 (Fla. Dist. Ct. App. 1989); *Cornwell v. Univ. of Fla.*, 307 So. 2d 203, 205-10 (Fla. Dist. Ct. App. 1975); *Cotter v. Dist. Bd. of Trs. of Pensacola Jr. Coll.*, 548 So. 2d 731, 731-32 (Fla. Dist. Ct. App. 1989); *Chung-Ling Yu v. Criser*, 330 So. 2d 198, 200-03 (Fla. Dist. Ct. App. 1976). Parfitt chose not to do so, instead pursuing a grievance under the CBA. By electing the grievance procedure, Parfitt waived any right to seek judicial review. (Doc. 1-2 at 72). Like *McKinney*, therefore, Parfitt had an available forum in Florida's state court to remedy any procedural deprivation, but simply chose not to use it. 20 F.3d at 1562-64; *see also Cotton*, 216 F.3d at 1330-31.

Parfitt argues an adequate state remedy was unavailable because he needed to waive it. He makes much ado about this waiver being coerced or made under duress or Llorens breaching the CBA first. Yet there is no need to address those misplaced, conclusory arguments. What Parfitt did is common in Florida: he made an enforceable election of remedies under the CBA. *See, e.g.*, *City of Miami v. Miami Lodge #20*

*Fraternal Order of Police*, 247 So. 3d 618, 622-24, 626 (Fla. Dist. Ct. App. 2018); *Taylor v. Pub. Emps. Relations Comm'n*, 878 So. 2d 421, 422-23 (Fla. Dist. Ct. App. 2004). He chose between the CBA's grievance and arbitration procedure or judicial review in state court—picking the former. That Parfitt had to select one of two adequate state procedures does not render the selection or its process flawed. *See Lewis v. Hillsborough Transit Auth.*, 726 F.2d 664, 667 (11th Cir. 1983) ("If [plaintiff] in fact could elect his remedies, that only indicates that he had more, not less, procedural safeguards."); *see also Bussinger v. City of New Smyrna Beach, Fla.*, 50 F.3d 922, 926 (11th Cir. 1995) (requiring "courts to evaluate the adequacy of all remedies available to a plaintiff and not just those remedies he elected to pursue").

Moreover, Parfitt's argument he "was not required to exhaust administrative or contractual remedies as a condition of Federal Court jurisdiction" misses the mark. (Doc. 69 at 10). As the Eleventh Circuit explained, the *McKinney* rule "is not an exhaustion requirement"; "it is a recognition that procedural due process violations do not even exist unless no adequate state remedies are available." *Cotton*, 216 F.3d at 1331 n.2. This claim does not fail because Parfitt neglected to exhaust his remedies. It fails because adequate remedies were available, so no procedural due process violation occurred. *Id.*; *see also Reams*, 561 F.3d at 1266.

To the extent that Parfitt argues state courts might apply an exhaustion requirement, his position again falls short. He points to no fact or law for the proposition that an exhaustion bar awaited him in state court. Conversely, Parfitt apparently contends any Florida exhaustion rule would not apply on these facts, buttressing the conclusion he could have sought review. In any event, even if a state court would have dismissed for

failure to exhaust, these federal procedural due process claims flop for a separate reason—another adequate state remedy existed.

Parfitt could have sought review of his termination through final, binding arbitration with limited judicial review of the result. (Doc. 1-2 at 76); Fla. Stat. §§ 447.401, 682.13. Indeed, Parfitt asks the Court to compel arbitration—arguing it is available to this day. There is not a peep from Parfitt that a state court would not compel arbitration. As explained below, this Court cannot. But that is not to say Parfitt was without a remedy in the state system. It appears Parfitt flouted the CBA's process for filing an arbitration demand. Specifically, Parfitt submitted an arbitration request himself without Union approval. While Parfitt could represent himself at arbitration because the Union declined representation, the CBA still requires the Union to submit an arbitration demand. (Doc. 1-2 at 75 ("All Step 3 Request for Arbitration shall be signed by the grievant and sent by the [Union] to the [FGCU] Office of Academic Affairs and the [Union] State President or State Director of Arbitration."). As the CBA states, the Union is "the certified bargaining agent" who "shall decide whether to proceed to arbitration." (Doc. 1-2 at 75). Yet the Union did not send or weigh in on the request, so Llorens refused to honor it.[6]

To be sure, Parfitt disputes the propriety of Llorens' refusal to arbitrate. Yet as Llorens notes, Parfitt had an adequate state remedy to fix any issue with that denial or even the Union not sending Parfitt's request. (Doc. 68 at 9 n.7, 15 n.10, 20 n.13). When faced with an employer's or union's improper rejection of arbitration, a Florida public

---

[6] Eventually, the Union signed a letter stating its nonopposition to Parfitt arbitrating. (Doc. 1-14). Yet the Court does not consider that exhibit. While Parfitt discussed the document in his briefing (Doc. 69 at 7), it was not specifically incorporated into the Complaint. Even if the Court considered the exhibit, it only confirms the Union did not sign its nonopposition to arbitration until after the deadline. So the request would be untimely.

employee may file an unfair labor charge with the Florida Public Employees Relations Commission ("PERC").  *City of Hollywood v. Perrin*, 292 So. 3d 808, 812-13 (Fla. Dist. Ct. App. 2020) (holding a petition to compel a public employer to arbitrate constituted an arguably unfair labor charge that should have been filed with PERC); *see also Sheriff of Palm Beach Cty. v. Palm Beach Cty. Police Benevolent Ass'n*, 97 So. 3d 933, 933 (Fla. Dist. Ct. App. 2012) (affirming PERC order compelling a public employer to arbitrate because its refusal was an unfair labor practice).[7]  So Parfitt could have filed a charge with PERC to compel arbitration.  *E.g.*, *Sheriff of Palm Beach*, 97 So. 3d at 933; *see also* Gregg Riley Morton, *Unfair Labor Practices in Florida's Public Sector Workplaces*, 93 Fla. B.J. 41, 43-44 (2019) (explaining that unfair labor practice charges for refusal to arbitrate "are common" and PERC employs a "forgiving standard, which promotes erring on the side of sending even grievances that appear to lack merit to arbitration").  Even if PERC denied that request, Parfitt would have recourse in state court to review the denial.  *See Pensacola Junior Coll. Faculty Ass'n v. Pensacola Junior Coll. Bd. of Trs.*, 50 So. 3d 700, 701-03 (Fla. Dist. Ct. 2010); *Fla. Pub. Emps. Council 79, AFSCME, AFL-CIO v. State of Fla.*, 921 So. 2d 676, 677-81 (Fla. Dist. Ct. App. 2006).  Thus, a state process was available to cure any harm and send the grievance to arbitration.  Parfitt simply failed to pursue the remedy.

In sum, there were adequate state remedies to cure any procedural due process deprivation.  So *McKinney* bars Parfitt's claims.  *E.g.*, *McKinney*, 20 F.3d at 1565; *Cotton*,

---

[7] This is distinguishable from cases in which an employee unsuccessfully challenged termination through another avenue, then sought to compel arbitration through a grievance procedure by filing an unfair labor charge.  *See Miami Lodge*, 247 So. 3d at 622-24.  In that scenario, an employee cannot seek arbitration after electing and litigating another remedy to resolution.  *Id.*; *see also City of Jacksonville, Jacksonville Sheriff's Office v. Cowen*, 973 So. 2d 503, 509 (Fla. Dist. Ct. App. 2007).

216 F.3d at 1331.   And Counts 1 and 2 are dismissed with prejudice.   Given this conclusion, there is no need to address Llorens' qualified immunity.   *Faucher v. Rodziewicz*, 891 F.2d 864, 871 (11th Cir. 1990).

**B.  Arbitration**

Moving onto Count 3, Parfitt seeks to compel arbitration.   There are several reasons this claim fails.

To start, Llorens is not a party to the CBA or its arbitration clause.  "Generally, a party cannot compel a non-party to arbitrate."  *Ray v. NPRTO Fla., Inc.*, 322 F. Supp. 3d 1261, 1262 (M.D. Fla. 2017); *see Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 148-49 (Fla. 2016).   There are exceptions to that rule, which are governed by state contract law.   *Lawson v. Life of the S. Ins.*, 648 F.3d 1166, 1170-71 (11th Cir. 2011). Florida courts identify five theories by which a nonparty could be compelled to arbitrate. *Johnson v. Pires*, 968 So. 2d 700, 701 (Fla. Dist. Ct. App. 2007); *see also Ocean M Ltd., v. Dorr*, No. 18-24530-CIV-UNGARO/O'SULLIVAN, 2019 WL 2254832, at *6 (S.D. Fla. Feb. 15, 2019).   No exceptions are mentioned in the briefing here.   While Parfitt alleges Llorens has the authority to decide whether to arbitrate under the CBA, the CBA is a contract between FGCU's Board of Trustees (the "Board") and the Union.   And Parfitt makes no argument for compelling a nonparty like Llorens to arbitrate.   Thus, it is unclear how Parfitt can force Llorens to arbitrate.

Leaving that issue aside, the Court must dismiss this claim because it lacks jurisdiction because of sovereign immunity.   *See* (Doc. 66 at 4-10).

Generally, states are immune from suit in federal court.   U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1 at 10-15 (1890).   Parfitt tries to bring this claim under an

exception to that principle: the *Ex parte Young*, 209 U.S. 123 (1908), doctrine.  *Ex parte Young* applies if "a plaintiff challenges a state official's action on federal grounds," permitting "the plaintiff to seek prospective injunctive relief."  *Nat'l Ass'n of the Deaf v. Florida*, 945 F.3d 1339, 1351 (11th Cir. 2020).  That said, the doctrine "prohibits a plaintiff from seeking injunctive relief when he alleges merely 'that a state official has violated *state* law.'"  *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).  To determine whether "*Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration accepted and citation omitted).

Notably, the doctrine "does not apply 'when the state is the real, substantial party in interest.'"  *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (quoting *Pennhurst*, 465 U.S. at 101); *see also Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014).  And "the 'general criterion for determining when a suit is in fact against the sovereign is the *effect* of the relief sought.'"  *Stewart*, 563 U.S. at 256 (quoting *Pennhurst*, 465 U.S. at 107).  So if the prospective relief requested is the "functional equivalent of a form of relief barred by the Eleventh Amendment" (like money damages payable from the state treasury), *Ex parte Young* does not apply.  *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337, 1340 (11th Cir. 1999) (internal quotation marks omitted).

Parfitt argues the relief sought will not impact the state fisc or, at most, have only an ancillary effect.  *See Edelman v. Jordan*, 415 U.S. 651, 666-68 (1974).  So as the

argument goes, Parfitt does not seek relief prohibited by the Eleventh Amendment.  Yet *Edelman* and other Supreme Court opinions have been clear money damages are not the only prohibited form of relief under *Ex parte Young*.  *E.g.*, *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281-82 (1997).

Because the Board (i.e., an arm of the state) is the real, substantial party in interest on this claim, it is barred by sovereign immunity.  *See Stewart*, 563 U.S. at 253-55; *Pennhurst*, 465 U.S. at 100-01; (Doc. 66 at 5-7).  Count 3 pursues an order compelling Llorens to direct the Board to arbitrate under the CBA.  (Doc. 67 at 17-18).  In other words, Parfitt seeks specific performance from the state on a state contract.  *E.g.*, *Vaden v. Discover Bank*, 556 U.S. 49, 63 (2009) (noting a petition to compel arbitration "is essentially a plea for specific performance of an agreement to arbitrate"); *United Paperworks Int'l, Local No. 395 v. ITT Rayonier, Inc.*, 931 F.2d 832, 835-36 (11th Cir. 1991) ("It is clear, then, that the Supreme Court has characterized a suit to compel arbitration as a suit for specific performance of a contract to arbitrate grievance disputes. Our circuit has done likewise.") (collecting cases).  Going all the way back to *Ex parte Young*, the doctrine does not allow suit against individual officers when the relief sought would effectively require the state's specific performance under a contract:

> [A]lthough the state was not in name made a party defendant, yet, being the actual party to the alleged contract the performance of which was sought, and the only party by whom it could be performed, the state was, in effect, a party to the suit, and it could not be maintained for that reason.

*Ex parte Young*, 209 U.S. at 151-53 (citing *Hagood v. Southern*, 117 U.S. 52, 52-67 (1886)); *see also Stewart*, 563 U.S. at 256-57 ("*Ex parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury or an order for

specific performance of a State's contract." (internal citation omitted)); *Tamiami Partners, Ltd. ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Fla.*, 177 F.3d 1212, 1226 (11th Cir. 1999)* ("*Ex parte Young* does not permit individual officers of a sovereign to be sued when the relief requested would, in effect, require the sovereign's specific performance of a contract.").   By seeking the "functional equivalent" of specific performance against the Board, Count 3 does not fit within the *Ex parte Young* exception. *See Stewart*, 563 U.S. at 256-57; *Tamiami Partners*, 177 F.3d at 1225-26.

Recently, the Third Circuit considered a similar issue.  There, the court held *Ex parte Young* did not apply when a governor was sued to compel his state to abide by the terms of a contract. *Waterfront Comm'n of N.Y. Harbor v. Governor of N.J.*, No. 19-2458, 2020 WL 3025215, at *6 (3d Cir. June 5, 2020).  *Waterfront* noted "such relief would operate against [the state] as the real, substantial party in interest"; therefore, the governor had sovereign immunity, and the court lacked jurisdiction. *Id.*

The same is true here.  In no uncertain terms, Parfitt asks the Court to compel an arm of the state to comply with its alleged contractual obligations.  To end run the Board's clear sovereign immunity, this Complaint simply substitutes Llorens for the Board.  But that does not change who the real, substantial party in interest is for Count 3—the Board. No matter how Parfitt wants to caption this case, the Board (not Llorens) would arbitrate Parfitt's grievance.  And because of the Board's sovereign immunity, the Court cannot compel it to arbitrate. *See Stewart*, 563 U.S. at 254-57.

Likewise, Parfitt brings this claim against Llorens for violating state law, so *Ex parte Young* does not apply. *E.g.*, *Ass'n of the Deaf*, 945 F.3d at 1351.  To start, Count 3 itself seeks to compel arbitration under state law (i.e., Florida Statute § 682.03).  Parfitt claims

both a contractual and statutory right to arbitrate from the CBA and Florida Statute § 447.401.  Those both arise under state law.  In several places, Parfitt alludes to a constitutional right to arbitrate.  But he never points to anything standing for that proposition.  Instead, Parfitt contends because he alleged a due process deprivation in Counts 1 and 2, his claim to compel arbitration seeks to end the ongoing federal violation. Yet he does not have a due process right to arbitrate.  Parfitt had a pretermination right for notice and opportunity to be heard.  The process due did not include a constitutional right to arbitration.  Rather, any right he had arose from the CBA and state statute.  So at most, the denial of Parfitt's arbitration request violates state law, not due process.  *See Jolibois*, 654 F. App'x at 466.  For Count 3, therefore, Parfitt seeks to end a violation of state law, and *Ex parte Young* does not apply.  *Cf. Ass'n of the Deaf*, 945 F.3d at 1351-52 (applying *Ex parte Young* when an injunction prohibited ADA violations).

Parfitt cites a readily distinguishable reinstatement case.  In *Lane*, the Eleventh Circuit held the equitable relief of reinstatement fell within *Ex parte Young* and was not barred by sovereign immunity.  772 F.3d at 1351.  Yet there, plaintiff sought reinstatement after being fired in retaliation for exercising his First Amendment rights.  *Lane v. Cent. Ala. Cmty. Coll.*, No. CV-11-BE-0883-M, 2012 WL 5289412, at *5 (N.D. Ala. Oct. 18, 2012).  And the prospective relief of reinstatement ended the ongoing federal violation. Similarly, the cases *Lane* relied on sought similar equitable relief to end ongoing federal deprivations.  *See Cross v. Ala. State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1501-03 (1995); *Lassiter v. Ala. A&M Univ., Bd. of Trs.*, 3 F.3d 1482, 1485 (11th Cir. 1993).

On the other hand, Parfitt claims a standalone right to arbitrate—separate from his procedural due process claims and reliant on state law.  His demand for declaratory relief and reinstatement seek to end the alleged federal violations in Count 1 and 2.  (Doc. 67 at 17-18).  But Count 3 is different; it is an independent claim to enforce a state-law right to arbitrate.  To allow such a claim would be a broad extension of an otherwise narrow exception.  It would eviscerate the well-settled understanding that *Ex parte Young* is "necessary to 'permit the federal courts to vindicate federal rights'" by ordering "a state official to do nothing more than refrain from violating federal law."  *Stewart*, 563 U.S. at 254-55 (quoting *Pennhurst*, 465 U.S. at 105).

And finally, even if the Court ignored the other issues, Parfitt has one last problem.  To the extent that Parfitt could allege an ongoing violation of federal law against only Llorens by refusing to arbitrate, the Court decided above there was no due process violation.  So there is no ongoing violation of federal law, and *Ex parte Young* does not apply.  *See Summit*, 180 F.3d at 1337-38.

For those reasons, Count 3 is dismissed without prejudice.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 68) is **GRANTED**.

   a. Counts 1 and 2 are **DISMISSED with prejudice**.

   b. Count 3 is **DISMISSED without prejudice**.

2. The Clerk is **DIRECTED** to enter judgment, terminate any pending motions or deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 23rd day of June, 2020.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record